IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32356-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| ADRIAN MUNOZ-RIVERA, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Adrian Munoz-Rivera appeals his convictions for second degree assault and felony harassment of nine-year-old K.T., his live-in girl friend's daughter. We review his six contentions and affirm his conviction and term of sentence. We however remand for the trial court to (1) strike that portion of the sentence authorizing a 10-year domestic violence protection order in favor of K.T., (2) strike various community custody conditions that are not crime related, (3) conduct a meaningful colloquy to determine whether Mr. Munoz-Rivera has the present or future ability to pay discretionary legal financial obligations (LFOs), and (4) correct a scrivener's error.

FACTS

In November 2013, Adrian Munoz-Rivera was living with Maria Tamayo and her nine-year-old daughter, K.T. They had been living together for approximately 19 months. Mr. Munoz-Rivera and Ms. Tamayo had a difficult relationship, which escalated to physical violence when Mr. Munoz-Rivera drank alcohol.

The night of November 2, 2013, the three returned home from a friend's birthday party. Mr. Munoz-Rivera and Ms. Tamayo had been drinking. While preparing to go to bed, the two argued over various things, including an incident that occurred at the party earlier in the night. When Mr. Munoz-Rivera made advances toward Ms. Tamayo, she attempted to leave their bedroom. Mr. Munoz-Rivera blocked the door, pushed her onto the bed several times, hit her, tried to choke her, and tried to take her telephone away because she wanted to call 911. Ms. Tamayo began banging on the walls and screaming for her daughter. When K.T. approached the bedroom, Ms. Tamayo told her to get help. Mr. Munoz-Rivera attempted to stop K.T. from getting help, but both Ms. Tamayo and K.T. managed to open the door and go outside down the stairs.

Ms. Tamayo began to knock on a neighbor's door to get help, but Mr. Munoz-Rivera grabbed K.T. by the hair and dragged her back up the stairs. Mr. Munoz-Rivera, armed with a knife, forced K.T. inside the apartment. Once inside, he held the knife to

2

K.T.'s neck. Ms. Tamayo ran back to the apartment. When Ms. Tamayo opened the door to the apartment, she saw Mr. Munoz-Rivera holding a knife to K.T.'s neck. Mr. Munoz-Rivera asked Ms. Tamayo if she wanted to see her daughter die. Ms. Tamayo asked Mr. Munoz-Rivera to think about what he was doing. Mr. Munoz-Rivera moved to the side, and K.T. moved away from him. While still holding the knife, Mr. Munoz-Rivera asked Ms. Tamayo again if she wanted to see her daughter die.

After a time, Mr. Munoz-Rivera put the knife away. K.T. went to her room and took the screen off her window. She waved her hands in front of the window to try and get the attention of some people outside the building. During the commotion, a downstairs neighbor called the police. Police arrived quickly.

When City of Pasco Patrol Officer Corey Smith responded to the scene he could see K.T. in the window of the apartment waving at him. When he approached, K.T. told him, "[S]hush, my step-dad is trying to kill me." Report of Proceedings (RP) at 80. Officer Smith went to the door of the apartment and saw Ms. Tamayo standing there with blood on her face. He saw signs of struggle in the apartment. Mr. Munoz-Rivera was in the bedroom sitting on the bed and buttoning his shirt. Officer Smith observed a bite mark on Ms. Tamayo's inner thigh. Ms. Tamayo also had injuries to her face and neck.

3

Mr. Munoz-Rivera was arrested. While in jail, Mr. Munoz-Rivera attempted to contact Ms. Tamayo by telephone and letter. In the letters, he sought Ms. Tamayo's help in obtaining an attorney and defusing the allegations against him.

The State charged Mr. Munoz-Rivera with second degree assault of K.T. while armed with a deadly weapon, second degree assault of Ms. Tamayo who was a "family or household member," felony harassment of K.T. by threatening to kill her, and tampering with a witness as to Ms. Tamayo. Clerk's Papers (CP) at 118-19. The case proceeded to jury trial on March 5-7, 2014.

At trial, K.T. testified under her full name and stated she was 10 years old and had recently had a birthday. K.T. also testified she thought Mr. Munoz-Rivera was going to kill her when he was holding the knife to her neck. Ms. Tamayo testified that while Mr. Munoz-Rivera was pointing the knife at K.T. and asking if she wanted to see her daughter die, she felt very afraid for K.T. Mr. Munoz-Rivera denied threatening K.T. or pointing a knife at her.

The court gave the State's proposed "to convict" instruction for second degree assault. It provided:

INSTRUCTION NO. 11
To convict the defendant of the crime of Assault in the Second Degree, as charged in Count I, each of the following two elements of the crime must be proved beyond a reasonable doubt:

4

(1)  That on or about November 3, 2013, the defendant assaulted K.T. (DOB: 11/27/03) with a deadly weapon;

(2)  That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proven beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to either element (1) or (2), then it will be your duty to return a verdict of not guilty.

CP at 42.

The court also gave the State's "to convict" instruction for felony harassment.  It provided:

INSTRUCTION NO. 17

To convict the defendant of the crime of Harassment, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1)  That on or about November 3, 2013, the defendant knowingly threatened to kill K.T. (DOB: 11/27/03) immediately or in the future;

(2)  That the words or conduct of the defendant placed K.T. (DOB: 11/27/03) in reasonable fear that the threat to kill would be carried out;

(3)  That the defendant acted without lawful authority; and

(4)  That the threat was made or received in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 48.

5

The jury found Mr. Munoz-Rivera guilty of second degree assault of K.T. while armed with a deadly weapon, felony harassment of K.T., and tampering with a witness as to Ms. Tamayo. The jury found Mr. Munoz-Rivera not guilty of second degree assault of Ms. Tamayo. The jury found by special verdict that Mr. Munoz-Rivera and Ms. Tamayo were members of the same family or household.

At sentencing, the State requested an exceptional sentence and asked that the sentence for tampering with a witness be run consecutively with the other two charges. The court instead entered a standard range sentence with the three sentences running concurrently. However, the judgment and sentence included a finding that "[s]ubstantial and compelling reasons exist which justify an exceptional sentence . . . above the standard range for Count I." CP at 11.

The judgment and sentence also included a condition that Mr. Munoz-Rivera have no contact with K.T. and Ms. Tamayo for 10 years. The trial court issued a 10-year domestic violence no-contact order in conjunction with the sentence naming K.T. and Ms. Tamayo as the protected victims. The no-contact order included a finding that Mr. Munoz-Rivera's relationship with the protected parties was as a "current or former cohabitant as intimate partner" and as an "other family or household member as defined in RCW 10.99." CP at 4.

Additionally, the court imposed $1,581.25 of discretionary costs consisting of a

$381.25 sheriff service fee, a $700.00 fee for a court appointed attorney, and a $500.00

fine under RCW 9A.20.021. The court ordered $1,502.42 of mandatory costs consisting

of a $452.42 fee as restitution to the crime victims compensation program, a $500.00

victim penalty assessment, a $200.00 criminal filing fee, a $250.00 jury demand fee, and

a $100.00 deoxyribonucleic acid (DNA) collection fee. Mr. Munoz-Rivera's LFOs

totaled $3,083.67. The judgment and sentenced contained the following preprinted

finding relating to Mr. Munoz-Rivera's ability to pay LFOs:

> The court has considered the total amount owing, the defendant's past,
> present and future ability to pay legal financial obligations, including the
> defendant's financial resources and the likelihood that the defendant's
> status will change. The court finds: . . . [t]hat the defendant is an adult and
> is not disabled and therefore has the ability or likely future ability to pay the
> legal financial obligations imposed herein. RCW 9.94A.753.

CP at 11. Finally, the court imposed an 18-month term of community custody that

included several conditions.

Mr. Munoz-Rivera appeals, contending: (1) the State failed to prove beyond a

reasonable doubt the elements of second degree assault and felony harassment as

instructed to the jury, (2) the trial court lacked authority to designate K.T. as a protected

party of a domestic violence no-contact order, (3) Mr. Munoz-Rivera's counsel was

ineffective for failing to challenge his offender score, (4) the trial court erred by imposing

7

certain community custody conditions that are not crime related, (5) the trial court erred in imposing discretionary LFOs without considering Mr. Munoz-Rivera's current or future ability to pay as directed by RCW 10.01.160(3), and (6) the judgment and sentence contains a scrivener's error that should be corrected.

## ANALYSIS

1. *Whether the State's identification of the victim as "K.T. (DOB: 11/27/03)" in the jury instructions for second degree assault and felony harassment added an additional element to the charge, which the State then failed to prove with sufficient evidence.*

Mr. Munoz-Rivera contends that identification of the victim in jury instructions as "K.T. (DOB: 11/27/03)" caused these details to become part of the State's burden of proof by operation of the law of the case doctrine. The State counters that its efforts to protect the victim's privacy interests in the written record should not be viewed as adding additional elements to the charge, but that even if these identifiers are treated as additional elements, the State produced sufficient evidence to prove them beyond a reasonable doubt.

Evidence is sufficient if, when viewed in the light most favorable to the State, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Tilton*, 149 Wn.2d 775, 786, 72 P.3d 735 (2003) (quoting *State v. Joy*, 121 Wn.2d 333, 338, 851 P.2d 654 (1993)). Courts must draw all reasonable

8

inferences from the evidence in favor of the State and interpret the evidence most strongly against the defendant. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence receives the same weight as direct evidence. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). Appellate courts defer to the fact finder on the resolution of conflicting testimony, credibility determinations, and the persuasiveness of the evidence. *Id.* at 874-75.

Jury instructions receive de novo review, but are interpreted within the context of the instructions as a whole. *State v. Jackman*, 156 Wn.2d 736, 743, 132 P.3d 136 (2006). Jury instructions must inform the jury that the State bears the burden of proof for every essential element of the crime beyond a reasonable doubt. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995).

Under the law of the case doctrine, jury instructions not objected to become the applicable law, even if the instructions contain an unnecessary element of the crime. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). Thus, if an unnecessary element is added in the "to convict" instruction in a criminal case without objection, the State assumes the burden of proving the added element. *Id.* Where the sufficiency of the evidence is challenged in a law of the case conviction, the reviewing court must consider the sufficiency in light of the instructions. *Id.* at 102-03.

9

Mr. Munoz-Rivera does not assign error to the instructions. Instead, he relies exclusively on *Hickman* to argue that because the State proposed the "to convict" instructions for both second degree assault and felony harassment naming "K.T. (DOB: 11/27/03)" as the victim, the law of the case required the State to prove beyond a reasonable doubt that Mr. Munoz-Rivera committed those crimes against a person named K.T., whose date of birth was November 27, 2003. CP at 42, 48. In *Hickman*, the court concluded that because the State had acquiesced to jury instructions that included venue as an element, the State had to prove venue to prevail. 135 Wn.2d at 105. Thus, the jury instruction modified the insurance fraud charge to require the State to prove the defendant had presented a false insurance claim in Snohomish County. *Id.* This was significant because the defendant had actually called from Hawaii to a location in King County to submit his fraudulent insurance claim. *Id.* at 105-06. The court concluded that there was no evidence that the crimes occurred in Snohomish County. *Id.* at 106.

Here, the trial occurred in March 2014. K.T. testified and gave her full name to the jury. K.T. also testified that she was 10 years old, and had recently had a birthday. The State proposed the instruction naming the victim as "K.T. (DOB: 11/27/03)." The State notes that the jurors did not send any written question during their deliberations expressing confusion as to "K.T (DOB: 11/27/03)." By placing K.T.'s date of birth in

10

parentheticals, the State did not add her date of birth as an additional and otherwise unnecessary element. Rather, the parenthetical date of birth information was given to identify K.T. and thus distinguish her from any other person whose name might have been mentioned during the trial. To hold otherwise would place form over substance and manufacture an ambiguity on appeal that certainly never entered the jurors' minds. We hold that the State, by using parenthetical date of birth information, did not add the victim's date of birth to the essential elements of second degree assault or felony harassment.

2.      *Whether the trial court erred in designating K.T. as a protected party of a domestic violence no-contact order.*

Mr. Munoz-Rivera contends the trial court lacked statutory authority to designate K.T. as a protected party of a domestic violence no-contact order because K.T. does not qualify as a "family or household member" of Mr. Munoz-Rivera.

This issue turns on the correct interpretation of the domestic violence act, chapter 10.99 RCW. "The meaning and purpose of a statute is a question of law, subject to de novo review." *State v. O'Brien*, 115 Wn. App. 599, 601, 63 P.3d 181 (2003). An appellate court's "function in interpreting a statute is to discover and give effect to the intent of the Legislature." *State v. Hansen*, 122 Wn.2d 712, 717, 862 P.2d 117 (1993). "Absent ambiguity, this court relies on the plain language of the statute to derive its

11

meaning." *State v. Garnica*, 105 Wn. App. 762, 772, 20 P.3d 1069 (2001). Chapter

10.99 RCW should be construed as a whole without placing undue emphasis on

individual provisions of the statute. *State v. Villegas*, 72 Wn. App. 34, 38-39, 863 P.2d

560 (1993)).

RCW 10.99.040(2)(a) authorizes a court to enter a no-contact order when a person

is charged with a crime involving domestic violence. A no-contact order may also be

made a condition of a sentence for a person who has been convicted of a crime.

RCW 10.99.050(1). "Domestic violence" includes various crimes (including second

degree assault) that are "committed by one family or household member against another."

RCW 10.99.020(5). In this context, "family or household member" means

> spouses, former spouses, persons who have a child in common regardless of
> whether they have been married or have lived together at any time, adult
> persons related by blood or marriage, adult persons who are presently
> residing together or who have resided together in the past, persons sixteen
> years of age or older who are presently residing together or who have
> resided together in the past and who have or have had a dating relationship,
> persons sixteen years of age or older with whom a person sixteen years of
> age or older has or has had dating relationship, and persons who have a
> biological or *legal parent-child relationship, including stepparents and
> stepchildren and grandparents and grandchildren.*

RCW 10.99.020(3) (emphasis added).

Here, it is undisputed that K.T. is not Mr. Munoz-Rivera's biological child. It is

also undisputed that Mr. Munoz-Rivera and K.T.'s mother, Ms. Tamayo, were in a dating

12

relationship and were residing together at the time the crimes occurred. Mr. Munoz-Rivera contends that while he referred to Ms. Tamayo as his "wife" a number of times during his testimony, there was no evidence presented that he and Ms. Tamayo were legally married. RP at 240. Thus, he argues, he does not have a biological or legal parent-child relationship with K.T.

The State counters that the statute's language indicates the legislature intended that the definition of "family or household member" be interpreted broadly, beyond strict legal relationships. We reject this argument because the argument is inconsistent with the plain language of the statute which uses the phrase "legal parent-child relationship" when referring to stepchildren.

The State next argues that the trial court had authority to bootstrap a chapter 10.99 RCW domestic violence protection order onto a community custody condition because former RCW 9.94A.505(8) (2010)[1] authorizes trial courts to impose crime-related prohibitions. The State cites *State v. Armendariz*, 160 Wn.2d 106, 112-13, 156 P.3d 201 (2007). While *Armendariz* allows a trial court to impose a general, no-contact order as a crime-related prohibition, it does not allow a trial court to impose a domestic violence protection order to protect persons outside its express provisions.

---

[1] RCW 9.94A.505(8) was renumbered RCW 9.94A.505(9) per the LAWS OF 2015,

13

The State next argues that *State v. Cortes Aguilar*, 176 Wn. App. 264, 308 P.3d 778 (2013), *review denied*, 179 Wn.2d 1011, 316 P.3d 494 (2014), permits K.T. to be listed as a protected party under chapter 10.99 RCW because she was an indirect victim of the violence committed against her mother. In *Cortes Aguilar*, the trial court granted no-contact orders protecting two children from their father because they had been victimized in the process of a murder he committed against their mother. 176 Wn. App. at 278. One child had been a direct victim, having been hit while trying to intervene, and both children were indirect victims because they had witnessed the incident. *Id.* The *Cortes Aguilar* court upheld the no-contact orders against the defendant even as to the child who was an indirect victim of the crime. *Id.* But this case is distinguishable from *Cortes Aguilar*. While K.T. may have been an indirect victim of the domestic violence committed against her mother, she still is not a "victim" for purposes of the domestic violence act, which defines "victim" as a "family or household member who has been subjected to domestic violence." RCW 10.99.020(8). In contrast, both children in *Cortes Aguilar* satisfied that definition as the biological children of the defendant. Therefore, the State's reliance on *Cortes Aguilar* is misplaced.

---

ch. 287, §10.

Because Mr. Munoz-Rivera and K.T. do not qualify as "family or household members" under the plain language of RCW 10.99.020(3), the trial court erred in including K.T. as a protected party in the 10-year domestic violence no-contact order.[2]

3.   *Whether Mr. Munoz-Rivera's counsel was ineffective for failing to challenge his offender score by arguing the second degree assault and felony harassment convictions arose out of the same criminal conduct.*

Mr. Munoz-Rivera contends he received ineffective assistance of counsel when his attorney failed to argue at sentencing that the convictions for second degree assault and felony harassment counted as one under the same criminal conduct rule.

A claim for ineffective assistance of counsel presents a mixed question of law and fact, which this court reviews de novo. *State v. Jones*, 183 Wn.2d 327, 338, 352 P.3d 776 (2015). "Competency of counsel is determined based upon the entire record below." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To prevail on a claim of ineffective assistance of counsel, Mr. Munoz-Rivera must show: (1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced him, i.e., there is a reasonable probability that, except for

---

[2] We nevertheless note that K.T. and her mother are protected by a separate 10-year no-contact order entered as part of the judgment and sentence. The propriety of this protection order is not contested.

counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 334-35. If a defendant fails to establish either prong, this court need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

A defendant must also overcome a strong presumption that counsel's representation was effective. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). However, this presumption may be rebutted "where there is no conceivable legitimate tactic explaining counsel's performance." *Id.* The failure to make a same criminal conduct argument is prejudicial if the defendant shows that with the argument the sentence would have differed. *State v. Beasley*, 126 Wn. App. 670, 686, 109 P.3d 849 (2005).

A court may consider current convictions involving the "same criminal conduct" as one crime for sentencing purposes. RCW 9.94A.589(1)(a). Offenses will count as the "same criminal conduct" only when they (1) require the same criminal intent, (2) are committed at the same time and place, and (3) involve the same victim. RCW 9.94A.589(1)(a). Courts narrowly construe the same criminal conduct rule and if any of the three elements is missing, each conviction must count separately in the calculation of the defendant's offender score. *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997).

16

Here, there is no dispute that Mr. Munoz-Rivera committed assault and felony harassment at the same time and place. However, the State contends that while K.T. was the intended victim of the assault, both K.T. and Ms. Tamayo were victims of the felony harassment. Additionally, the State argues the criminal intent changed between the two crimes.

In determining whether the two convictions involved the same victim, it is important to note that two crimes cannot be the same criminal conduct if one involves two victims and the other involves only one. *See State v. Davison*, 56 Wn. App. 554, 559-60, 784 P.2d 1268 (1990); *State v. Dunaway*, 109 Wn.2d 207, 217, 743 P.2d 1237 (1987) ("[C]rimes involving two victims constitute two separate incidents of criminal conduct."). Here, the basis for the felony harassment conviction was Mr. Munoz-Rivera asking Ms. Tamayo if she wanted to see her daughter die. The information named K.T. the victim of that threat and the "to convict" jury instruction for felony harassment required the jury to find that Mr. Munoz-Rivera both threatened to kill K.T. and placed K.T. in reasonable fear that the threat to kill would be carried out. While the State argues that Ms. Tamayo was also a victim of Mr. Munoz-Rivera's threat to kill K.T., the State's own theory of the case was that K.T. was the intended victim of such harassment. *Cf. State v. Morales*, 174

17

Wn. App. 370, 381-84, 298 P.3d 791 (2013). Thus, the convictions for assault and felony harassment both involved the same victim—K.T.

Crimes may involve the same criminal intent if they were part of a "continuing, uninterrupted sequence of conduct." *Porter*, 133 Wn.2d at 186. But when an offender has time to "pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act," and makes the decision to proceed, he or she has formed a new intent to commit the second act. *State v. Grantham*, 84 Wn. App. 854, 859, 932 P.2d 657 (1997). In *Grantham*, the defendant anally raped the victim. *Id.* at 856. The victim did not move afterward, and the defendant began kicking her. She then begged for him to stop and for him to take her home. He then threatened her not to tell. He then forced her to perform oral sex on him. The *Grantham* court properly held that there was evidence of new objective intent between the two rapes. *Id.* at 859. In so holding, the court reasoned that the defendant had time to reflect on what he did, threaten the victim not to tell, and he then used new force to commit the second rape. *Id.*

The facts here are arguably distinguishable from *Grantham*. Here, Mr. Munoz-Rivera committed the second degree assault and the felony harassment almost simultaneously, there was not a discussion between the two acts, and the second act was virtually identical to the first. Nevertheless, we do not view defense counsel's failure to

raise this issue as deficient. Defense counsel knew that the State would argue for an exceptional sentence because of the victim's age. Rather than argue whether the two acts were separate criminal acts for a one offender point reduction, defense counsel successfully focused on rebutting the State's requests for an exceptional sentence and for the witness intimidation sentence to run consecutive with the two other convictions. Indeed, had he argued both issues, the trial court might have rendered a split decision, agreeing with the defense that the two acts were the same for sentencing purposes, but agreeing with the State that an exceptional sentence or a consecutive sentence was warranted. We find defense counsel's strategy during sentencing sound and not deficient.

4.   *Whether the trial court erred by imposing certain drug-related community custody conditions.*

Mr. Munoz-Rivera contends that the trial court exceeded its statutory authority by imposing community custody conditions that are not crime related. He argues that conditions that preclude him from possessing or using drug paraphernalia and loitering for the purpose of engaging in drug-related activity, that prohibit association with drug users or dealers or being in high drug use areas, and that require him to undergo evaluation and treatment for substance abuse are not related to his crimes, as required by RCW 9.94A.505. The State contends that because Mr. Munoz-Rivera committed the crimes while under the influence of alcohol, the drug-related community custody

19

conditions are sufficiently crime related, as any substance abuse treatment for alcohol use will necessarily require him to refrain from spending time around drugs or other individuals using drugs.

Mr. Munoz-Rivera did not object to any of these conditions at sentencing. Nevertheless, a defendant may challenge an erroneously imposed sentence for the first time on appeal. *State v. Jones*, 118 Wn. App. 199, 204, 76 P.3d 258 (2003). This court reviews sentencing conditions for abuse of discretion. *State v. Crockett*, 118 Wn. App. 853, 856, 78 P.3d 658 (2003). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Even with this abuse of discretion standard, "a court will more carefully review a condition that interferes with a fundamental constitutional right." *Cortes Aguilar*, 176 Wn. App. at 277. "Conditions on a sentence that impose limitations on a fundamental right must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" *Id.* (quoting *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)).

Former RCW 9.94A.505(8) permitted a court to impose "crime-related prohibitions" as conditions of a sentence.[3] A "crime-related prohibition" is "an order of a

---

[3] Mr. Munoz-Rivera relies on former RCW 9.94A.505(8) because it was the statute

20

court *prohibiting conduct that directly relates to the circumstances of the crime* for which

the offender has been convicted." RCW 9.94A.030(10) (emphasis added). Former

RCW 9.94A.703(3)[4] permits courts to impose certain discretionary conditions as part of

any term of community custody, including requiring the defendant to:

> (b) Refrain from direct or indirect contact with the victim of the crime or a specified class of individuals;
> (c) Participate in crime-related treatment or counseling services;
> (d) Participate in rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community;
> (e) Refrain from consuming alcohol; or
> (f) Comply with any crime-related prohibitions.

---

in effect when the crime was committed. The State does not challenge Mr. Munoz-Rivera's reliance on former RCW 9.94A.505(8). However, the current version of the statute, recodified as RCW 9.94A.505(9), has added a statement that "'[c]rime-related prohibitions' may include a prohibition on the use or possession of alcohol or controlled substances if the court finds that any chemical dependency or substance abuse contributed to the offense." This new version of the statute became effective July 24, 2015. LAWS OF 2015, ch. 81, § 1; LAWS OF 2015, ch. 287, § 10.

The Sentencing Reform Act of 1981, chapter 9.94A RCW, provides that any sentence imposed under its authority must be in accordance with the law in effect when the offense was committed. RCW 9.94A.345. Because the legislature did not express a "contrary intent" in the amendatory act that the amended and recodified statute apply retroactively, this court should apply former RCW 9.94A.505(8), which was in effect when the crimes were committed in November 2013. *See State v. Snedden*, 166 Wn. App. 541, 544, 271 P.3d 298 (2012).

[4] The legislature also amended RCW 9.94A.703(3)(e) to allow a court to order an offender to "[r]efrain from *possessing or* consuming alcohol," effective July 24, 2015. LAWS OF 2015, ch. 81, § 3 (emphasis added). For the same reasons as described in footnote two, this court should apply former RCW 9.94A.703(3)(e), which was in effect when the crimes were committed in November 2013.

In *Jones*, this court struck community custody conditions requiring the defendant to participate in alcohol and mental health treatment and counseling. 118 Wn. App. at 207-09. This court held that conditions imposed as "rehabilitative programs" or "affirmative conduct" must be supported by evidence in the record or found by the trial court to be related to the underlying offense. *Id.* at 208. The court reasoned that allowing trial courts to order a rehabilitation program, regardless of the program's relationship to the underlying offense, would render superfluous former RCW 9.94A.700(5)(c) (2003), which, like former RCW 9.94A.505(8), provided that trial courts could order an offender to "participate in crime-related treatment or counseling services." *Id.* at 207-08. At the same time, this court upheld a condition prohibiting Mr. Jones from consuming alcohol, holding that, consistent with the plain language of former RCW 9.94A.703(3)(e), a trial court could impose the prohibition regardless of whether alcohol contributed to the commission of the underlying crime. *Id.* at 206-07.

Here, Mr. Munoz-Rivera contends that *Jones* requires this court to strike the drug-related community custody conditions because the record reveals Mr. Munoz-Rivera was under the influence of alcohol and not any other substances when the crimes were committed. The first community custody condition Mr. Munoz-Rivera challenges is one prohibiting him from "possess[ing] or us[ing] drug paraphernalia or commit[ting] the

22

offense of loitering for the purpose of engaging in drug related activity." CP at 17. The State presented no evidence that possession or use of drug paraphernalia or loitering for the purpose of engaging in drug-related activity were in any way related to the crimes for which he was convicted. Additionally, "mere possession of drug paraphernalia is not a crime." *State v. Land*, 172 Wn. App. 593, 605, 295 P.3d 782 (2013). Therefore, these conditions must be stricken.

Second, Mr. Munoz-Rivera challenges community custody condition that states he "shall not associate with any known user or dealer of unlawful controlled substances nor frequent any places where the same are commonly known to be used, possessed or delivered." CP at 17. As stated above, RCW 9.94A.703(3)(b) provides that a court has the discretion to order an offender to "[r]efrain from direct or indirect contact with the victim of the crime or a specified class of individuals." But again, such a condition, prohibiting contact with a "specified class of individuals" must be crime related. *State v. Riles*, 135 Wn.2d 326, 350, 957 P.2d 655 (1998), *abrogated on other grounds by State v. Valencia*, 169 Wn.2d 782, 792, 239 P.3d 1059 (2010). Furthermore, it is not illegal to associate with drug users or dealers or to be in high drug use areas. Therefore, because this condition is not sufficiently crime related in this case, in which there is no evidence of drug use, it must also be stricken.

23

Finally, Mr. Munoz-Rivera challenges the condition that he undergo evaluation and treatment for "substance abuse" to the extent that it requires him to undergo treatment for substances other than alcohol. The relevant statutory provision states that a court may require an offender to "[p]articipate in *crime-related* treatment or counseling services." RCW 9.94A.703(3)(c) (emphasis added). In *Jones*, the reviewing court concluded the trial court had improperly imposed a condition requiring alcohol counseling when there was evidence that methamphetamines, but not alcohol, contributed to the offense. 118 Wn. App. at 207-08. While the opposite is true here, where there was no evidence that any substances other than alcohol contributed to the offense, *Jones* is still informative. Therefore, because there is no evidence that substances other than alcohol contributed to Mr. Munoz-Rivera's crimes, substance abuse evaluation and treatment must be restricted to alcohol.

To summarize our resolution of this issue, we remand to the trial court to strike the conditions precluding Mr. Munoz-Rivera from possessing or using drug paraphernalia and loitering for the purpose of engaging in drug-related activity, to strike the condition prohibiting Mr. Munoz-Rivera from associating with drug users or dealers or from being in high drug use areas, and to narrow the substance abuse evaluation and treatment to alcohol.

24

5.      *Whether the trial court erred in imposing LFOs without considering Mr. Munoz-Rivera's financial resources under RCW 10.01.160(3).*

For the first time on appeal, Mr. Munoz-Rivera contends that the trial court improperly imposed LFOs without considering his financial resources under RCW 10.01.160(3). He challenges $1,581.25 of discretionary costs consisting of a $381.25 sheriff service fee, a $700.00 fee for a court appointed attorney, and a $500.00 fine under RCW 9A.20.021. Mr. Munoz-Rivera does not challenge the remaining $1,502.42 of mandatory LFOs, consisting of $452.42 for restitution to the crime victims compensation program, $500.00 victim penalty assessment, $200.00 criminal filing fee, $250.00 jury demand fee, or $100.00 DNA collection fee.

RCW 10.01.160(1) states, "The court may require a defendant to pay costs." RCW 10.01.160(2) describes what items may be assessed as costs, and sets forth financial limits for certain costs. RCW 10.01.160(3) provides:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

RAP 2.5(a) provides, in relevant part, that an appellate court "may refuse to review any claim of error which was not raised in the trial court." The rule provides three exceptions that allow an appeal as a matter of right. RAP 2.5(a). Mr. Munoz-Rivera does

not argue that one of the RAP 2.5(a) exceptions applies. Instead, he asks this court to exercise its discretion to review the issue.

The Washington Supreme Court recently clarified that an appellate court's discretion under RAP 2.5(a) extends to reviewing a trial court's imposition of discretionary LFOs. *State v. Blazina*, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015). While such unpreserved LFO errors do not command review as a matter of right, each appellate court is entitled to "make its own decision to accept discretionary review." *Id.* at 835.

The *Blazina* court also determined that RCW 10.01.160(3) requires the trial court to "do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry." *Id.* at 838. Instead, "[t]he record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay." *Id.* This inquiry includes consideration of factors such as the defendant's financial resources, incarceration, and other debts, including restitution. *Id.*

Rather than exercise our discretion to review whether discretionary LFOs were properly imposed, we remand this issue to the trial court for it to make an adequate inquiry as discussed above.

26

6.      *Whether it was a scrivener's error for the judgment and sentence to include a finding of an exceptional sentence where the trial court did not make such a finding or impose such a sentence.*

Mr. Munoz-Rivera contends, and the State concedes, that the judgment and sentence improperly included a finding that "[s]ubstantial and compelling reasons exist which justify an exceptional sentence . . . above the standard range for Count I." CP at 11. The remedy for clerical or scrivener's errors in judgment and sentence forms is remand to the trial court for correction. *State v. Naillieux*, 158 Wn. App. 630, 646, 241 P.3d 1280 (2010). Therefore, we also remand for correction of this error.

Affirm in part and remanded for proceedings consistent with this opinion.

Lawrence-Berrey, J.

I CONCUR:

Korsmo, J.

27

No. 32356-1-III

SIDDOWAY, C.J. (concurring) — I write separately to explain why I join in exercising discretion to consider Mr. Munoz-Rivera's argument for the first time on appeal that the record does not support the trial court's finding that he was able to pay the legal financial obligations (LFOs) imposed.

It was well settled before *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), that we may exercise discretion to review error raised for the first time on appeal. But we ordinarily do not. Most often we follow the "general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them." *State v. Guzman Nunez*, 160 Wn. App. 150, 157, 248 P.3d 103 (2011) (citing *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)), *aff'd*, 174 Wn.2d 707, 285 P.3d 21 (2012).

Here, however, we will be sending the case back to the trial court for correction of a scrivener's error and to strike and narrow some of the conditions of community custody. Although Mr. Munoz-Rivera was 29 years old at the time he was sentenced, was established by trial testimony to have more than full-time employment, and may have knowingly forgone a challenge to his ability to pay at the time of sentencing, it is undisputed that the trial court did not engage in an individualized inquiry about his ability to pay before imposing discretionary LFOs. Where a criminal defendant fails to preserve a trial court's error in failing to conduct an individualized inquiry, judicial economy will

sometimes be served by reviewing that error if we will be remanding for resentencing for other reasons. This is such a case.

Siddoway, C.J.

2