# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75949-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JERICHO HAMMERQUIST, | ) | |
| | ) | FILED: April 30, 2018 |
| Appellant. | ) | |

VERELLEN, J. — Jericho Hammerquist pleaded guilty to two counts of first degree rape of a child. The sentencing court entered community custody conditions restricting Hammerquist's ability to associate with known drug users or sellers, possess drug paraphernalia, and remain in drug areas. The court also required him to participate in substance abuse treatment. Because the conditions referring to drugs and drug areas are not sufficiently crime related, they should be stricken. The State concedes the condition restricting Hammerquist from areas where minor children are known to congregate is unconstitutionally vague.

The State also concedes the conditions preventing Hammerquist from accessing computer chat rooms, or the Internet on any computer unless approved should be stricken because they are not crime related.

The court also entered a condition preventing Hammerquist from possessing or maintaining access to a computer, unless specifically authorized by his community corrections officer (CCO). Because the condition as drafted might be read to limit Hammerquist's exercise of his First Amendment rights, on remand, the sentencing court should clarify the limits of "possessing or maintaining access to a computer" consistent with Packingham v. North Carolina.[1]

Hammerquist also challenges his offender score. He pleaded guilty to the federal crime of possession of child pornography under 18 U.S.C. § 2252A and was sentenced on September 25, 2013 by a Texas federal court. Even if the federal crime is not comparable to a Washington crime and is scored as a class C felony under the Washington Sentencing Reform Act of 1981,[2] Hammerquist's prior crimes, including his federal sex offense, result in a total offender score of 6. The sentencing court properly calculated his offender score.

Therefore, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## FACTS

Jericho Hammerquist raped his niece, H.G., when they both lived in Snohomish County between 2008 and 2010. H.G. was between the ages of 8 and 10 years old at the time. Hammerquist is nearly 20 years older than H.G. Hammerquist photographed some of the sexual acts with H.G. The photographs

---

[1] 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017).
[2] Ch. 9.94A RCW.

2

were discovered on Hammerquist's laptop computer when he was arrested for a traffic violation in Texas.

Hammerquist was charged in the United States District Court of the Eastern District of Texas with one count of possession of child pornography under 18 U.S.C. § 2252A. He stipulated to the charge on December 19, 2012, and was sentenced on September 25, 2013 to 60 months of confinement. Federal authorities sent information about Hammerquist's offenses to the Snohomish County Sheriff.

While Hammerquist was in custody in Texas, the State charged him with two counts of first degree rape of a child and one count of sexual exploitation of a minor. He pleaded guilty to an amended information alleging two counts of first degree rape of a child on July 13, 2016.

The State calculated Hammerquist's offender score as 6 by including the prior federal offense, treated as a class C felony and scored as 3 points, because it was a sex offense. The court sentenced Hammerquist to 162 months to life in prison based on an offender score of 6. The court also imposed community custody for life,[3] and gave Hammerquist credit for time served from March 13, 2012, the date the court issued a warrant for his arrest.

---

[3] The State recites that the court imposed a community custody term of 36 months, but consistent with RCW 9.94A.507(5), the court checked the community custody box imposing community custody "for any period of time that the defendant is released from total confinement before expiration of the maximum sentence." Clerk's Papers (CP) at 15. Hammerquist's maximum sentence is the statutory maximum of life. RCW 9.94A.507(3)(b); RCW 9A.20.021(1)(a); RCW 9A.44.073.

Hammerquist appeals.

## ANALYSIS

### I. Community Custody Conditions 6, 14, 15, 16, 25

Hammerquist argues several community custody conditions should be stricken. He challenges conditions 14, 15, and 25, arguing they are not crime related:

14. Do not associate with known users or sellers of illegal drugs.

15. Do not possess drug paraphernalia.

. . . .

25. Participate in substance abuse treatment as directed by the supervising Community Corrections Officer.[4]

A court may require a defendant to comply with any crime-related prohibition.[5] A "crime-related prohibition" is defined as "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted."[6] "[N]o causal link need be established between the prohibition imposed and the crime committed, so long as the condition relates to the circumstances of the crime."[7] The State concedes these conditions are not crime related.

---

[4] CP at 25-26.

[5] RCW 9.94A.703(3)(f).

[6] RCW 9.94A.030(10).

[7] State v. Acrey, 135 Wn. App. 938, 946, 146 P.3d 1215 (2006).

Hammerquist also challenges condition 16, that he "[s]tay out of drug areas, as defined in writing by the supervising Community Corrections Officer."[8]

RCW 9.94A.703(3)(a) allows a court to enter discretionary conditions, including ordering an offender to "[r]emain within, or outside of, a specified geographical boundary." The State suggests this requirement does not need to be related to the crime, but we disagree. In State v. Munoz-Rivera, the court observed, "Furthermore, it is not illegal to associate with drug users or dealers or to be in high drug use areas. Therefore, because this condition is not sufficiently crime related in this case, in which there is no evidence of drug use, it must also be stricken."[9] Similarly, here, there is no evidence of drug use.[10]

Hammerquist contends condition 6, that he "not frequent areas where minor children are known to congregate, as defined by the supervising Community Corrections Officer"[11] is unconstitutionally vague. This court has found that, without further clarification, "where minors are known to congregate" is

---

[8] CP at 25.

[9] 190 Wn. App. 870, 893, 361 P.3d 182 (2015).

[10] See State v. Riles, 135 Wn.2d 326, 350, 957 P.2d 655 (1998) (observing that although a defendant's constitutional rights during community placement are subject to certain infringements authorized by the Sentencing Reform Act, "the defendant's freedom of association may be restricted only to the extent it is reasonably necessary to accomplish the essential needs of the state and the public order"), abrogated on other grounds by State v. Valencia, 169 Wn.2d 782, 239 P.3d 1059 (2010).

[11] CP at 25.

unconstitutionally vague.[12] The State concedes this court should remand with instructions to clarify or strike this condition of community custody.

We conclude conditions 14, 15, 16 and 25 are insufficiently crime-related and should be stricken. We also conclude condition 6 is unconstitutionally vague and should be stricken or clarified on remand.

II. Conditions 18, 19, 22

The State concedes condition 18 to "not access the internet on any computer [unless approved]" and 19, to "not use computer chat rooms" should be stricken as not crime related. The concession is well taken. There is no connection between the crimes and access to the Internet or use of chat rooms.

Hammerquist argues condition 22 should be stricken on First Amendment grounds. Condition 22 provides:

> *You may not possess or maintain access to a computer*, unless specifically authorized by your supervising Community Corrections Officer. You may not possess any computer parts or peripherals, including but not limited to hard drives, storage devices, digital cameras, web cams, wireless video devices or receivers, CD/DVD burners, or any device to store or reproduce digital media or images.[13]

The First Amendment prohibits the government from proscribing speech or expressive conduct.[14] A convicted defendant's constitutional rights are subject to infringement authorized by the Sentencing Reform Act during the period of

---

[12] State v. Irwin, 191 Wn. App. 644, 655, 364 P.3d 830 (2015).

[13] CP at 26 (emphasis added).

[14] U.S. CONST. amend. I; State v. Halstein, 122 Wn.2d 109, 121, 857 P.2d 270 (1993).

community custody.[15] Where a sentencing condition interferes with a fundamental constitutional right, the condition must be reasonably necessary to accomplish the essential needs of the State and public order.[16] "Additionally, conditions that interfere with fundamental rights must be sensitively imposed."[17] The right to free speech bars the government from dictating what people see, read, hear, or speak.[18] "The freedom of speech has its limits; it does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children."[19]

Hammerquist suggests United States v. White and United States v. Freeman are instructive, but those federal appellate cases were not resolved on First Amendment grounds.[20] Here, Hammerquist's narrow challenge is to the condition's validity under the First Amendment, not its crime relatedness.

Hammerquist argues the recent United States Supreme Court ruling in Packingham renders condition 22 unconstitutional.[21] In Packingham, the Supreme Court held a North Carolina statute violated the First Amendment

---

[15] State v. Ross, 129 Wn.2d 279, 287, 916 P.2d 405 (1996).

[16] State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008);

[17] Id.

[18] Ashcroft v. Free Speech Coalition, 535 U.S. 234, 245, 122 S. Ct. 1389, 152 L. Ed. 2d 403 (2002).

[19] Id. at 245-46.

[20] United States v. White, 244 F.3d 1199, 1206 (10th Cir. 2001); United States v. Freeman, 316 F.3d 386, 391-92 (3rd Cir. 2003).

[21] The United States Supreme Court issued its opinion in Packingham on June 19, 2017, after Hammerquist submitted his opening brief.

because it restricted lawful speech.[22] That statute made it a felony for a registered sex offender "to access a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages."[23]

Hammerquist suggests if the social media access ban in Packingham violates the First Amendment, we should reach the same result here because "computers are the mediums which allow people to access the internet."[24]

The State concedes Hammerquist may have access to the Internet and computer chat rooms. But such access necessarily requires the use of a computer. There is potential ambiguity in the condition 22 restrictions on *possessing* or *maintaining access* to a computer subject to CCO approval. For example, does possessing or maintaining access to a computer extend to using a computer at a place of employment, or the library?

The Packingham court's primary concern was how the North Carolina law's restriction on access to information suppressed free speech:

> Social media allows users to *gain access to information and communicate with one another about it on any subject that might come to mind.* By prohibiting sex offenders from using those websites, North Carolina with one broad stroke bars access to what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge. *These websites can provide perhaps the*

---

[22] Packingham, 137 S. Ct. at 1737.

[23] Id. at 1733; N.C. Gen. Stat. Ann. §§ 14-202.5(a), (e).

[24] Reply Br. of App. at 5.

> *most powerful mechanisms available to a private citizen to make his or her voice heard.*[25]

If condition 22 is intended to prevent any use of a computer absent CCO approval without stating any standard to be applied by the CCO, then it may *prevent* Hammerquist from enjoying his right to "gain access to information and communicate" with others about "any subject that might come to mind."[26]

Because Hammerquist used a computer to store sexual images of his victim, the second sentence of condition 22 understandably restricts Hammerquist from possessing any device, part, or peripheral capable of storing images.[27] But that concern does not support an absolute bar on any use of any computer for *legitimate* activity, as recognized in Packingham: searching for jobs, keeping up with current events, and communicating with others about political and social concerns.

In view of the potential impact on recognized free speech rights, the scope and meaning of any limitation on the use of computers must be clarified on remand. Specifically, the sentencing court should clarify (i) the distinction between merely using a computer and possessing or maintaining access to a computer; (ii) what standards apply to the CCO in determining what access to computers is allowed; and (iii) given the ubiquitous presence of computers in our society, if, and

---

[25] Packingham, 137 S. Ct. at 1737 (citation omitted) (emphasis added).

[26] Id.

[27] Although not addressed by condition 22, that same concern may also extend to access to cloud storage for images.

9

why, condition 22 impacts any use or possession of items that include computers with no capacity to store or download images.

### III. Offender Score and Sentence

Hammerquist argues the court erred when it calculated his offender score.

RCW 9.94A.525(2)(a) proscribes the method for calculating an offender score. Prior sex offenses are always included in the offender score,[28] and

> [o]ut-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law. Federal convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law. If there is no clearly comparable offense under Washington law or the offense is one that is usually considered subject to exclusive federal jurisdiction, the offense shall be scored as a class C felony equivalent if it was a felony under the relevant federal statute.[29]

To determine if an out-of-state conviction is comparable, this court engages in a two-part inquiry.[30] Under the legal prong, we compare the elements of the out-of-state crime with the relevant Washington crime.[31] "If the elements of the out-of-state crime are comparable to those of a Washington offense, then the out-of-state conviction is counted as an equivalent Washington conviction."[32] If the elements of the out-of-state crime are different or broader, we engage in the second step of the

---

[28] RCW 9.94A.525(2)(a).

[29] RCW 9.94A.525(3).

[30] State v. Wade, 186 Wn. App. 749, 776, 346 P.3d 838 (2015).

[31] Id.

[32] Id.

inquiry to determine if "the defendant's conduct would have violated the comparable Washington statute."[33] As this court has recognized:

> The key inquiry is whether under the Washington statute, the defendant could have been convicted if the same acts were committed in Washington. While the sentencing court can examine the indictment or information as evidence of the underlying conduct, the elements of the crime remain the focus of the analysis.[34]

And if the present conviction is for a sex offense, the prior adult and juvenile sex offenses are scored three points each.[35]

Hammerquist pleaded guilty to violating 18 U.S.C. § 2252A, possession of child pornography. The stipulation on plea of guilty provides:

> On or about January 26, 2011, in the Eastern District of Texas, Hammerquist, did knowingly possess material, specifically a compact disc, which contains an image of child pornography as defined in 18 U.S.C. § 2256(8)(A), *that was produced using materials that had been mailed, shipped, and transported in and affecting interstate commerce.*[36]

Hammerquist contends the federal crime includes the broader element of interstate commerce, but any violation of the federal child pornography statute would necessarily violate RCW 9.68A.070. His conduct stipulated to in federal court would have violated the Washington statute. Hammerquist also argues the statutes are not comparable because the federal statute and Washington statute differ regarding simulated minors. But Hammerquist's federal stipulation on plea

---

[33] Id.

[34] State v. Thomas, 135 Wn. App. 474, 485, 144 P.3d 1178 (2006).

[35] RCW 9.94A.525(17).

[36] CP at 38 (emphasis added).

of guilty does not include the portion of that federal statute addressing simulated minors.[37] Therefore, his argument fails.

Hammerquist also contends the State is bound by its concession below that the federal conviction was subject to exclusive federal jurisdiction. But even if the federal conviction is subject to exclusive federal jurisdiction and is therefore considered a class C felony, the offender score calculation is still correct. Class C felonies are scored under the provisions in RCW 9.94A.525(7) through (21). Hammerquist's stipulated conduct in the federal conviction is a sex offense. And as the sentencing court observed, regarding RCW 9.94A.525(3), "The class C felony is there for the purpose of . . . how long it would take to [wash out] the other offenses. That's not an issue here, because it was a 2013 conviction."[38] RCW 9.94A.525(17) instructs the sentencing court to "count three points for each adult and juvenile sex offense conviction."

---

[37] Stipulated facts in foreign jurisdictions are properly considered when determining the correct offender score in Washington. See In re Personal Restraint of Lavery, 154 Wn.2d 249, 258, 111 P.3d 837 (2005) (holding federal conviction incomparable where Lavery had no motivation in the earlier conviction to pursue defenses that would have been available to him under Washington's robbery statute but were unavailable in the federal prosecution, and Lavery neither admitted nor stipulated facts which established specific intent in the federal prosecution, and specific intent which was required under the Washington statute, was not proved beyond a reasonable doubt); State v. Ortega, 120 Wn. App. 165, 173-74, 84 P.3d 935 (2004) (reasoning Texas and Washington statutes regarding second decree indecency with a child were incomparable because they criminalized contact with children of different ages (Texas – 17, Washington – 12), Ortega had neither stipulated nor admitted to the age of the child in the Texas case, and in the Texas case Ortega would have had no incentive to challenge and prove that the child was actually 12 at the time of contact because the critical fact in the Texas case was that the child was under 17).

[38] Report of Proceedings (Oct. 11, 2016) at 5-6.

We conclude the trial court correctly calculated Hammerquist's offender score as 6 under RCW 9.94A.525(17).

Therefore, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

WE CONCUR: