IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>            Respondent,<br><br>      v.<br><br>JACQUELINE KRISTIN WOOD,<br><br>            Appellant. | No. 81601-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Jacqueline Wood appeals her convictions for assault in the third degree and assault in the fourth degree. She asserts that the State failed to provide sufficient evidence to convict her of assault in the third degree, and that the jury should have been given a specific unanimity instruction on the charge of assault in the fourth degree. We disagree. With regard to the third degree assault conviction, there is sufficient evidence presented at trial that the defendant assaulted the victim and that the alternative spelling of the victim's name in the jury instructions was not an added element of the crime. As for Wood's fourth degree assault conviction, a unanimity instruction was not required because the assault was one continuing course of action. We affirm.

FACTS

On April 15, 2019, Andre Coburn and Jacqueline Wood had an argument at Wood's apartment. An inebriated Wood got on top of Coburn while he was attempting to sleep. After Wood continued to disturb Coburn, he stated that he would call 911 if she persisted. Wood attempted to stop Coburn from calling the

Citations and pin cites are based on the Westlaw online version of the cited material.

police by attempting to grab him and the phone. Once Coburn was connected to a 911 operator, Wood chased him around the apartment, tried to force him out to the balcony, pushed him, and dragged him down.

Mill Creek Police Officers Sergeant Bart Foutch and Corporal Marc Schuermeyer responded to Coburn's domestic violence 911 call at Wood's apartment. When Corporal Schuermeyer attempted to separate Wood from Coburn, Wood took up a fighting stance. As Corporal Schuermeyer attempted to arrest Wood, she grabbed his wrist and threw a punch. Corporal Schuermeyer was regaining control of Wood when they fell to the floor. On the floor, Wood kicked, punched, scratched, and attempted to bite the officers. The officers were eventually able to handcuff Wood and roll her onto her back. Sergeant Foutch then stood up and placed his right foot above Wood's right hip area in case she tried to move. However, when Sergeant Foutch moved his leg to greet other arriving officers, Wood brought her right leg up and kicked Sergeant Foutch's right knee causing him to fall and hurt his leg.

On April 30, 2019, the State charged Wood with third degree assault against Sergeant Foutch and fourth degree assault against Coburn. The charging document stated that, "the defendant . . . did intentionally assault Sgt. Barry Foutch[,] a law enforcement officer . . . who was performing his or her official duties at the time of the assault."

On November 4, 2020, the case proceeded to a jury trial. During trial, the State informed the jury that Wood's assault against Coburn consisted of the shoving and punching that was recorded on the 911 call. Furthermore, the jury

instruction No. 5 regarding the assault against Sergeant Foutch stated that,

> To convict the defendant of the crime of assault in the third degree, each of the following elements of the crime must be proved beyond a reasonable doubt: (1) That on or about April 15, 2019, the defendant assaulted Sergeant Barry Foutch; (2) That at the time of the assault Sergeant Barry Foutch was a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties. . .

On November 5, the jury found Wood guilty on both charges. On June 12, Wood was sentenced to 3 months on each count, to be served concurrently. Wood appeals.

## ANALYSIS

Wood contends that the State failed to prove beyond a reasonable doubt that she assaulted Sergeant *Bart* Foutch because the "to convict" jury instruction referred to a Sergeant *Barry* Foutch as the victim and the State did not prove that Bart and Barry were the same person. Furthermore, Wood claims that she was deprived of her right to a unanimous jury verdict on the assault charge against Coburn because the trial court did not instruct the jury that it had to agree on which of several acts described at trial constituted the charged assault.

### Sufficiency of the Evidence

Wood contends that her conviction for assault in the third degree must be reversed and dismissed with prejudice because the State failed to prove beyond a reasonable doubt that she assaulted Sergeant Barry Foutch. We disagree.

The Due Process Clause of the Fourteenth Amendment requires that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. In a criminal prosecution, "the Due Process

Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which they are charged." In Re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). On an appeal from a criminal conviction, due process further guarantees a defendant the right to challenge the sufficiency of the evidence proffered by the government. Jackson v. Virginia, 443 U.S. 307, 314–16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We review jury instructions de novo, but interpret them within the context of the instructions as a whole. State v. Jackman, 156 Wn.2d 736, 743, 132 P.3d 136 (2006).

Evidence is sufficient if, when viewed in the light most favorable to the State, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Tilton, 149 Wn.2d 775, 786, 72 P.3d 735 (2003) When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence receives the same weight as direct evidence. State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). "Appellate courts defer to the fact finder on the resolution of conflicting testimony, credibility determinations, and the persuasiveness of the evidence." State v. Munoz-Rivera, 190 Wn. App. 870, 882, 361 P.3d 182 (2015).

Under the law of the case doctrine, jury instructions not objected to become the applicable law, even if the instructions contain an unnecessary element of the crime. State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900

4

(1998). Thus, if an unnecessary element is added in the "to convict" instruction in a criminal case without objection, the State assumes the burden of proving the added element. Hickman, 135 Wn.2d at 102. Where the sufficiency of the evidence is challenged in such a case the reviewing court must consider the sufficiency in light of the instructions. Hickman, 135 Wn.2d. at 102-03.

In Hickman, Hickman and two acquaintances had plotted to fake the theft of Hickman's car for financial gain. Hickman, 135 Wn.2d at 100. After Hickman traveled to Hawaii, his friend who was taking care of the car reported the car stolen and Hickman, from Hawaii, called the insurance company, located in King County, Washington. Hickman, 135 Wn.2d at 100. The insurance company paid the balance of the loan on the car. Hickman, 135 Wn.2d at 100. The State charged Hickman with insurance fraud, and the "to convict" instruction provided "[T]hat the act occurred in Snohomish County, Washington." Hickman, 135 Wn.2d at 101. Our Supreme Court held that because the State included the venue in the jury instruction it became an element that the State had to prove beyond a reasonable doubt. Hickman, 135 Wn.2d at 105. Because the State failed to prove the venue in the instruction, the court reversed Hickman's conviction. Hickman, 135 Wn.2d at 105.

Similarly, in State v. Jussila, Jussila appealed his conviction for burglary and theft on the grounds of insufficient evidence. 197 Wn. App. 908, 912, 392 P.3d 1108 (2017). The "to convict" instructions for firearm theft identified the stolen gun's make, model, and serial number. Jussila, 197 Wn. App at 916. The jury returned a guilty verdict against Jussila. Jussila, 197 Wn. App at 919. On

5

appeal, we reversed the conviction because a literal reading of the jury instructions required proof beyond a reasonable doubt as to the make, model, and serial number of each gun. Nothing in the instruction informed the jury that the guns' identifying features were to be treated as anything other than elements of the crime. Jussila, 197 Wn. App at 924-25, 932. Because the State did not present evidence of the serial numbers and extremely limited evidence of make and model of the firearms, we held that there was insufficient evidence supporting Jussila's firearm convictions. Jussila, 197 Wn. App at 932.

However, in Munoz-Rivera, extra information in the jury instruction did not become an additional element. There, the State charged Munoz-Rivera with second degree assault and felony harassment against K.T., a minor. Munoz-Rivera, 190 Wn. App. at 878. The "to convict" jury instruction for second degree assault read in part, "the defendant assaulted K.T. (DOB: 11/27/03) with a deadly weapon." Munoz-Rivera, 190 Wn. App. at 879. At trial, K.T. testified as to her full name and age, but the State did not present evidence of her date of birth. Munoz-Rivera, 190 Wn. App. at 883. A jury found Munoz-Rivera guilty of both crimes. Munoz-Rivera, 190 Wn. App. at 876. On appeal, Munoz-Rivera claimed that the State needed to prove K.T.'s date of birth beyond a reasonable doubt because it was an added element included in the jury instruction. Munoz-Rivera, 190 Wn. App. at 881. We rejected Munoz-Rivera's argument, reasoning that,

> By placing K.T.'s date of birth in parentheticals, the State did not add her date of birth as an additional and otherwise unnecessary element. Rather, the parenthetical date of birth information was given to identify K.T. and thus distinguish her from any other person whose name might have been mentioned during the trial. To hold otherwise would place form over substance and manufacture an

ambiguity on appeal that certainly never entered the jurors' minds. Munoz-Rivera, 190 Wn App. at 883.

Here, where the "to convict" instruction contained a slightly different first name of the victim, the alternative spelling did not become an element of the crime.[1] The spelling of the police officer's first name when used in conjunction with his rank and last name is a less substantive change than the addition of the location or the make, model, and serial number of guns at issue in Jussila. Instead, this case is similar to Munoz-Rivera, where the incidental addition to the instruction related more to form than the substance of what the State had to prove to the jury. At trial, the only time Foutch's first name was used was when he stated his name for the record. Other than that, the witness was referred to as Sergeant Foutch. During Wood's testimony, she admitted that she touched Sergeant Foutch with her foot. Foutch testified that he was the victim of the assault. The jury ultimately returned a guilty verdict, indicating that the jurors found that Sergeant Barry Foutch, as identified in the "to convict" instruction, was the same person as Sergeant Bart Foutch who testified. This evidence is more than what was offered in Hickman and Jussila. Viewed in the light most favorable to the State, the totality of the evidence establishes that the State offered sufficient evidence that Wood assaulted Sergeant Foutch, and to reverse Wood's conviction over the spelling of the victim's first name would set "form over substance." Munoz-Rivera, 190 Wn. App. at 883.

---

[1] We also do not need to reach a decision on whether Sergeant Bart Foutch was ever known as Barry.

Unanimity Instruction

Wood further asserts that we should reverse her fourth degree assault conviction and remand for a new trial because the jury was not unanimous as to which of the several acts introduced at trial constituted the charged assault against Coburn. Although Wood did not request this instruction in the trial court "the right to a unanimous verdict is a fundamental constitutional right and may, therefore, be raised for the first time on appeal." State v. Holland, 77 Wn. App. 420, 424, 891 P.2d 49 (1995). Nonetheless, we disagree that such an instruction was necessary.

In Washington, criminal defendants have a right to a unanimous jury verdict. WASH. CONST. ART. I § 21. "Whether or not a unanimity instruction was required in a particular case is a question of law reviewed de novo." State v. Lee, 12 Wn. App. 2d 378, 393, 460 P.3d 701, review denied, 195 Wn.2d 1032, 468 P.3d 622 (2020); State v. Boyd, 137 Wn. App. 910, 922, 155 P.3d 188 (2007).

When the State alleges several acts which could constitute the charged crime, and the acts are not one continuous course of conduct, the court must instruct the jury that it must unanimously agree on which act constitutes the crime, which is known as the Petrich instruction. State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989); State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), (overruled in part on other grounds by State v. Kitchen, 110 Wn.2d 403, 406 n.1, 756 P.2d 105 (1988)), (abrogated in part on other grounds by In re Pers. Restraint of Stockwell, 179 Wn.2d 588, 316 P.3d 1007 (2014)). "The error stems

from the possibility that some jurors may have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction." Kitchen, 110 Wn.2d at 411.

"To determine whether criminal conduct constitutes one continuing act, the facts must be evaluated in a commonsense manner." Handran, 113 Wn.2d at 17. If there is evidence that the charged conduct occurred at different times and places, it tends to show that they are distinct acts. Handran, 113 Wn.2d at 17. Evidence that an offense involves a single victim, and that the accused engages in a series of acts toward the same objective, supports the characterization of those acts as a continuing course of conduct. Handran, 113 Wn.2d at 17.

In Petrich, the defendant sexually assaulted a minor over a period of March 1979, through December 1980, at various different locations. Petrich, 101 Wn.2d at 568. Our Supreme Court found that the mere similarity of having the same victim and the defendant was not enough to call the offense one interaction. Petrich, 101 Wn.2d at 571. Conversely, in Handran, the defendant was charged with first-degree burglary based on intent to commit assault against his ex-wife. Handran, 113 Wn.2d at 17. The defendant argued that the court failed "to instruct the jury that it must be unanimous as to which act alleged constituted the" assault for the first degree burglary charge. Handran, 113 Wn.2d at 17. The Court held that a unanimity instruction was not required because the assaultive acts occurred in quick succession and were part of a "continuing course of conduct intended to secure sexual relations" with a single victim. Handran, 113 Wn.2d at 17.

9

We conclude that, as in <u>Handran</u>, Wood's assault against Coburn was one continuing course of action. The assault occurred over a short period of time, in one location, and was only against Coburn. Although Wood took different actions during the course of the assault, it was one continuing course of conduct to get Coburn to hang up the 911 call. Therefore, a <u>Petrich</u> instruction is not required.

We affirm.

_____

WE CONCUR:

_____      _____
Brenner, J.                  Andrus, A.C.J.