IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33702-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MIGUEL ANGEL MAGALLAN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Miguel Angel Magallan appeals his conviction and

sentence following a jury verdict finding him guilty of one count of possession of a

controlled substance, heroin, and one count of possession of a controlled substance,

methamphetamine, with intent to deliver. The jury also found that the offenses occurred

within a drug protection zone. The trial court sentenced Mr. Magallan to a term of

imprisonment within the standard range in accordance with the jury's verdict and special

finding, and based on an agreed offender score of 9. The trial court also assessed

mandatory legal financial obligations (LFOs) and two discretionary LFOs.

Mr. Magallan contends: (1) the evidence was insufficient to convict him on the

charge of possession of a controlled substance, methamphetamine, with intent to deliver,

(2) the State failed to meet its burden in proving his criminal history at sentencing, and

(3) the trial court erred when it imposed various mandatory and two discretionary LFOs

without inquiring into his ability to pay those obligations.

We reject Mr. Magallan's first and second contentions, but agree that the trial

court erred when it imposed the two discretionary LFOs. We accept the State's

concession to direct the trial court to strike those discretionary LFOs rather than remand

for a new hearing. We also decline to award the State appellate costs, in accordance with

our June 10, 2016 general order.

## FACTS

Scott McLean, Mr. Magallan's probation officer, arrested Mr. Magallan on an

outstanding warrant. The warrant was issued because Mr. Magallan had recently tested

positive for methamphetamine and heroin. At the time of his arrest, Mr. Magallan was

staggering alongside his bicycle and carrying a backpack. In the search incident to arrest,

Officer McLean found a user's amount of heroin in Mr. Magallan's pocket. Officer

McLean also searched Mr. Magallan's backpack. In the backpack, Officer McLean found

two empty "baggies," a baggie with a white crystalline substance, and two vials with a

white crystalline substance. The baggie contained 27.6 grams of methamphetamine. One

vial contained 5.3 grams of methamphetamine, and the other vial was not tested. Converted into ounces, the total weight of the methamphetamine was 1.16 oz.

By amended information, the State charged Mr. Magallan with one count of possession of heroin and one count of possession of methamphetamine with intent to deliver and alleged that the latter offense occurred in a drug protection zone.

At trial, Detective Erik Horbatko testified that there was approximately 1.25 oz. of methamphetamine found in the baggie and containers. He estimated the wholesale price of that amount of methamphetamine was between $550 and $600. But if sold in multiple sales of smaller quantities, the retail price for that amount would be from $800 to $1,120. He estimated the number of individual doses for 1.25 oz. of methamphetamine was between 165 and 327, depending on such factors as the user's tolerance and the drug's purity. He testified that 1.25 oz. was "[n]o way" a user's amount, and that he had never seen a user with that much methamphetamine. Report of Proceedings (RP) at 75. He also testified that the two clean baggies found on Mr. Magallan were "intended to use to put something from a bigger amount to make it into a smaller amount for sale." RP at 78. He further testified that he had "never seen an ounce be personal use—in my entire career—so far." RP at 90.

3

Officer McLean also testified. He testified he had known Mr. Magallan for nine years and began directly supervising him 10 months prior to the encounter. He also testified Mr. Magallan did not have a job while under his supervision, he may have been receiving disability payments, and he may have been living with his son, but did not have his own telephone.

After the parties presented their evidence, the court instructed the jury on the two charged offenses and also on a lesser offense of possession of methamphetamine. The jury returned guilty verdicts on the two charged offenses and found that the intent to deliver offense occurred in a protected drug zone. For this reason, the jury did not reach a verdict on the lesser offense of possession of methamphetamine.

At sentencing, the State set forth in the proposed judgment and sentence a summary of Mr. Magallan's criminal history, together with an offender score of 9. Defense counsel admitted that Mr. Magallan had the criminal history set forth in the summary and that the offender score of 9 was correct. While admitting this, she argued for a lenient sentence:

> I would point out that—we have to go back 25 years to count the criminal offenses for Mr. Magallan. 1988, for which there's not even any paper work. 1989, 1993. He knows that those count under the current Sentencing Reform Act guidelines. They didn't used to. That was a change that was made several years ago to—make sure that any misdemeanor conviction prevented a washout instead of just felonies.

4

But we have somebody here who has an offender score—that he does. And technically there's seven prior felonies in the last 25 years. And then because he was on DOC that adds a point. And then because there are concurrent convictions that and that's how you get to nine.

RP at 258-59.

The trial court struck a few proposed discretionary LFOs from the proposed judgment and sentence prior to signing it. The trial court did not inquire into Mr. Magallan's present or future ability to pay the LFOs. The trial court imposed mandatory LFOs in the form of a $500 crime penalty assessment, a $200 criminal filing fee, and a $100 deoxyribonucleic (DNA) collection fee. The trial court also imposed discretionary LFOs in the form of costs of incarceration, capped at $100, and did not strike a separate paragraph that made Mr. Magallan responsible for the costs of his medical care while incarcerated.

Mr. Magallan appealed.

## ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Mr. Magallan contends the evidence is insufficient to show intent to deliver and only the lesser charge of possession of methamphetamine can be sustained.

Evidence is sufficient to convict if it permits a rational trier of fact to find the essential elements of the crime proved beyond a reasonable doubt. *State v. Munoz-*

5

*Rivera*, 190 Wn. App. 870, 882, 361 P.3d 182 (2015). This court "must draw all reasonable inferences from the evidence in favor of the State and interpret the evidence most strongly against the defendant." *Id.* Direct and circumstantial evidence carry the same weight. *Id.* We will "defer to the fact finder on the resolution of conflicting testimony, credibility determinations, and the persuasiveness of the evidence." *Id.* This court's role is not to reweigh the evidence and substitute its judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

Evidence of a specific criminal intent exists when the evidence supports a logical probability that the defendant acted with the requisite intent. *State v. Stearns*, 61 Wn. App. 224, 228, 810 P.2d 41 (1991). Evidence of the specific intent to deliver a controlled substance must be compelling. *State v. Davis*, 79 Wn. App. 591, 594, 904 P.2d 306 (1995); *State v. Lopez*, 79 Wn. App. 755, 768, 904 P.2d 1179 (1995).

Mr. Magallan argues the State's evidence was insufficient to prove intent to deliver because the State was required to prove more than he possessed a large quantity of contraband. We agree with the legal principle argued by Mr. Magallan, but disagree that the State's evidence was so limited.

In *Lopez*, Lopez purchased $1,000 of cocaine from narcotics officers. *Lopez*, 79 Wn. App. at 758. In the search incident to arrest, an officer found 14 individual quarter-

6

gram bindles of cocaine and more than $800 of cash. *Id.* at 759. The State charged

Lopez with two counts of possession of cocaine with intent to deliver, and one count of

delivery of cocaine to a person under 18 years of age in a public park. *Id.* at 760. At trial,

Lopez testified he was employed in construction prior to his arrest, and that all the money

he used to purchase the cocaine and the money found on him was from his employment.

*Id.* He explained he purchased a large amount of cocaine because he was an addict, and

that he would sometimes buy a two or three month supply. *Id.* at 759-60. Despite his

testimony, the jury convicted him of the possession with intent to deliver charges, but

acquitted him of the delivery to a minor charge. *Id.* at 760. The *Lopez* court repeated the

rule, "even possession of a large amount of controlled substances, without some

additional factor, is insufficient to establish intent." *Id.* at 768. In concluding that

sufficient evidence supported intent to deliver, the *Lopez* court determined that the

purchase of a large quantity of contraband, together with a large sum of cash on Lopez's

person, was sufficient. *Id.* at 769.

This case is similar to *Lopez*. In addition to the large amount of methamphetamine

found on Mr. Magallan, the State presented evidence that Mr. Magallan could not have

purchased that amount unless he also earned money selling it.

7

Mr. Magallan also relies upon *Davis*. The evidence in that case consisted of six individually wrapped baggies of marijuana, marijuana seeds, a small container of marijuana, a box of unused baggies, and another baggie with marijuana residue. *Davis*, 79 Wn. App. at 595. In reversing the intent to deliver charge, the *Davis* court determined "there was no evidence Mr. Davis had bought or sold marijuana or was in the business of buying or selling." *Id.* The *Davis* court reasoned that the packaging was "not inconsistent with personal use" and that the 19 grams of marijuana likewise could "certainly be consumed in the course of normal personal use." *Id.* at 595-96.

This case is distinguishable from *Davis* because the amount of contraband here is not consistent with personal use. Construing the evidence most favorably to the State, as we must for this type of review, possession of up to 317 individual doses together with empty baggies is indicative of intent to deliver rather than personal use.

Mr. Magallan also argues that an officer's opinion of what constitutes personal use is insufficient to infer intent. *State v. Hutchins*, 73 Wn. App. 211, 217, 868 P.2d 196 (1994). Again, we agree with the legal principle argued, but disagree that the State's evidence was so limited. Again, in addition to the large quantity of methamphetamine found on Mr. Magallan, the State submitted evidence that Mr. Magallan could not have possessed such a large amount of methamphetamine unless he also was selling it.

8

The State admits that this case is not the typical drug dealer case where a dealer might have a sophisticated operation and make good money selling contraband. Rather, the evidence suggested that Mr. Magallan traveled by bicycle instead of car, did not have his own telephone, and did not have his own home. The State argues,

> To require a level of sophistication as seen in many of the cases cited by Appellant to uphold a conviction for possession with intent to deliver will negate the State's ability to prosecute a vast array of individual[s] who are in fact selling drugs but doing [so] not to gain vast wealth but to support and sustain an all-consuming addiction.

Br. of Resp't at 6.

We agree. Whether intent to deliver has been proved beyond a reasonable doubt is a highly fact-specific inquiry. *Davis*, 79 Wn. App. at 594. Here, the State was permitted to argue that a methamphetamine user with little financial means could not come into such a large quantity of methamphetamine unless, in addition to using it, he was also selling it.

B.    PROOF OF PRIOR CRIMINAL HISTORY

Mr. Magallan argues the State did not meet its burden in proving his prior criminal history that was used to calculate his offender score.

Sentencing errors resulting in unlawful sentences may be raised for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). Offender score

calculations are reviewed de novo. *State v. Moeurn*, 170 Wn.2d 169, 172, 240 P.3d 1158 (2010).

The State has the burden of establishing a defendant's prior criminal history by a preponderance of the evidence to determine his or her offender score at sentencing. *State v. Ford*, 137 Wn.2d 472, 479-80, 973 P.2d 452 (1999). An unsupported statement of prior criminal history is insufficient to satisfy the State's burden of proof. *State v. Hunley*, 175 Wn.2d 901, 910, 287 P.3d 584 (2012). The State is relieved of this burden if the defendant affirmatively acknowledges his or her prior criminal history; the defendant's mere failure to object is insufficient. *Id.*

The State argues that defense counsel's admission of the correctness of the State's summary of prior criminal history and offender score calculation was a sufficient acknowledgment to relieve it of its burden. In *Ford*, the court noted that defense counsel's submissions in its proffered offender score calculation could be considered by the sentencing court without further proof. *Id.* at 483 n.5. We consider this note as sufficient authority to support the State's argument. We, therefore, conclude that defense counsel's admission was a sufficient acknowledgment to relieve the State of its burden of proving such facts.

10

## C. LEGAL FINANCIAL OBLIGATIONS

Mr. Magallan also challenges the imposition of both discretionary and mandatory LFOs. He contends that the trial court did not conduct an individualized inquiry into his ability to pay before it imposed the LFOs. He challenges the imposition of LFOs on several grounds—grounds he did not preserve through arguments to the trial court. Mr. Magallan urges this court to exercise its discretion to review his unpreserved challenges. Because the factors for exercising such discretion differ depending on the nature of the LFOs, we address Mr. Magallan's requests and arguments in two parts.

### 1. *Discretionary LFOs*

Whenever a person is convicted, the trial court "may order the payment of a legal financial obligation" as part of the sentence. RCW 9.94A.760(1); *see* RCW 10.01.160(1). We refer to costs that are authorized but not mandated as "discretionary costs."

Here, Mr. Magallan asserts that the $100 capped cost of incarceration and the uncapped medical care costs are discretionary LFOs. He is correct. *See State v. Leonard*, 184 Wn.2d 505, 507, 358 P.3d 1167 (2015).

By statute, the trial court is not authorized to order a defendant to pay discretionary costs unless he or she is or will be able to pay them. RCW 10.01.160(3). In determining

11

the amount and method of payment of such costs, the trial court shall take into account the financial resources of the defendant and the nature of the burden that payment of costs will impose. *Id.* Accordingly, "a trial court has a statutory obligation to make an individualized inquiry into a defendant's current and future ability to pay before the court imposes LFOs." *State v. Blazina*, 182 Wn.2d 827, 830, 344 P.3d 680 (2015).

Importantly, "the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry." *Id.* at 838. Therefore, "[t]he record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay."[1] *Id.* However, neither RCW 10.01.160 nor the constitution "'requires a trial court to enter formal, specific findings regarding a defendant's ability to pay [discretionary] court costs.'" *State v. Lundy*, 176 Wn. App. 96, 105, 308 P.3d 755 (2013) (alteration in original) (quoting *State v. Curry*, 118 Wn.2d 911, 916, 829 P.2d 166 (1992)).

"A defendant who makes no objection to the imposition of discretionary LFOs at sentencing is not automatically entitled to review." *Blazina*, 182 Wn.2d at 832. Subject

---

[1] Although courts have little guidance regarding what counts as an "individualized inquiry," *Blazina* makes clear, at a minimum, the sentencing court "must consider important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay," and "should also look to the comment in court rule GR 34 for guidance." *Blazina*, 182 Wn.2d at 838.

to three exceptions that do not apply here, RAP 2.5(a) provides that an "appellate court may refuse to review any claim of error which was not raised in the trial court." *Blazina* confirmed that an appellate court's discretion under RAP 2.5(a) extends to review of a trial court's imposition of discretionary LFOs. *Id.* at 834-35.

Under *Blazina*, each appellate court is entitled to "make its own decision to accept discretionary review" of unpreserved LFO errors. *Id.* at 835. Admittedly, the judges of this court are not in agreement as to what extent discretion should be exercised to review unpreserved LFOs. An approach favored by the author is to consider the administrative burden and expense of bringing a defendant to court for a new hearing, versus the likelihood that the discretionary LFO result will change. "An important consideration of this analysis is the dollar amount of discretionary LFOs imposed by the sentencing court." *State v. Arredondo*, 190 Wn. App. 512, 538, 360 P.3d 920 (2015), *review granted*, 185 Wn.2d 1024, 369 P.3d 502 (2016). In this case, the majority of these factors weigh in favor of reviewing Mr. Magallan's unpreserved discretionary LFO challenge.

First, the dollar amount of the discretionary LFOs the trial court imposed warrants granting review. The trial court imposed, perhaps unintentionally, medical costs incurred during incarceration. The sentence imposed was 114 months. Medical costs over the course of nearly 10 years might be substantial.

13

The second factor—the administrative burden and expense of bringing Mr. Magallan to court for a new sentencing hearing—weighs against granting review. Unless remand is otherwise required, the State would incur the extra expense of transporting Mr. Magallan to court.

The final factor weighs in favor of granting review—a new sentencing hearing would likely change the discretionary LFO result. As indicated earlier, Mr. Magallan probably depends on government assistance, and he has no car, no telephone, and no home of his own. A new sentencing hearing would very likely change the discretionary LFO result.

In weighing the relevant factors, we exercise our discretion and accept review of Mr. Magallan's discretionary LFO challenge. As acknowledged by the State, there is no evidence to support imposition of the discretionary LFOs. Rather than remand for a new sentencing hearing, the State requests that we remand with instructions to the trial court for it to strike the discretionary LFOs. We so instruct.

2. *Mandatory LFOs*

Mr. Magallan did not object to mandatory LFOs below. The State urges this court to decline to accept review of the unpreserved mandatory LFO challenge and to follow *State v. Stoddard*, 192 Wn. App. 222, 366 P.3d 474 (2016). In *Stoddard*, we refused to

14

review unpreserved arguments challenging the constitutionality of various mandatory LFOs. *Id.* at 226. The reason for our refusal was the record was insufficient for us to determine Stoddard's indigency. *Id.* at 228-29.

That is not the case here. The degree of Mr. Magallan's indigency was an important factor in the State's ability to prove intent to deliver. Indeed, it was an important factor supporting our affirmance.

We therefore agree to review Mr. Magallan's unpreserved mandatory LFO challenge. But we do so only in the most summary fashion. We note that the issues he raises were recently raised and rejected in *State v. Mathers*, 193 Wn. App. 913, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015, 380 P.3d 482 (2016). We similarly reject his challenges.

D.     COSTS ON APPEAL

Mr. Magallan requests that we exercise our discretion and not award the State appellate costs in the event it substantially prevails. In making his request, Mr. Magallan has complied with our June 10, 2016 general order and submitted sufficient proof of his continued indigency. We, therefore, decline to award the State costs on appeal.

15

No. 33702-2-III
*State v. Magallan*

Affirmed with instructions to correct the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.                    Siddoway, J.

16