IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39110-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JASPER JAMES NELSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Jasper Nelson appeals after the trial court revoked his SSOSA[1] sentence. He argues the trial court failed to give him adequate notice it would revoke his sentence for not making adequate progress, and the imposed sentence exceeds the maximum term. In addition, he challenges several community custody conditions.

We disagree with Mr. Nelson's first argument, accept the State's concession with respect to his second argument, and agree that a number of community custody conditions must either be struck or modified. We reverse and remand for the trial court to correct Mr. Nelson's sentence.

---

[1] Special sex offender sentencing alternative.

FACTS

The Steven's County Sheriff's Office received a report from the mother of A.J., a 12-year-old girl, that A.J. had run away with a 19-year-old man named Jasper Nelson. A.J.'s mother was concerned that the pair may be having a sexual relationship. When law enforcement located A.J., she admitted to having sexual intercourse with Mr. Nelson three times. When law enforcement located and interviewed Mr. Nelson, he also admitted to having sexual intercourse with A.J. on multiple occasions. He also admitted he knew A.J. was under the legal age of consent and what they did was illegal. Mr. Nelson also disclosed that he had solicited sex from one of A.J.'s classmates.

After further investigation, a detective learned that Mr. Nelson had solicited sex from J.W., an 11-year-old girl. J.W. told the detective she and Mr. Nelson met up several times and described various sorts of sexually inappropriate things Mr. Nelson did in her presence.

The State charged Mr. Nelson by amended information with three counts of third degree child rape (counts 1-3), one count of communication with a minor for immoral purposes (count 4), and one count of second degree child molestation (count 5). Mr. Nelson agreed to plead guilty to the charges and agreed that the court could review the

2

police reports and statements of probable cause to establish a factual basis for the guilty plea. In exchange, the State agreed to recommend a SSOSA.

The trial court accepted Mr. Nelson's guilty pleas and ordered a presentence investigation report. The report concluded that Mr. Nelson had "Mild Intellectual Disability and Unspecified Cognitive Disorder," and that he had a "documented history of neurocognitive deficits, ADHD [attention deficit hyperactivity disorder], behavioral problems, and mild intellectual disability." Clerk's Papers (CP) at 54.

*Sentencing*

At the start of the sentencing hearing, the State explained the reasons for its SSOSA recommendation. It explained that Mr. Nelson had the mental capacity of a 12- or 13-year old and, while he understood what he did was wrong, he did not fully appreciate the predatory nature of his actions. Defense counsel asked the court to follow the State's recommendation.

During the hearing, the trial court explained the difficulty it had sending a defendant to prison who is "not only young biologically, but also mentally." Rep. of Proc. (RP) (May 4, 2021) at 29. The court thought Mr. Nelson's actions were similar to a "lack of impulse control" but "more like a 14 year old responding hormonally, and yet having access to the Internet and a world of potential victims." RP (May 4, 2021) at 30.

The court also noted that it "observed there was no indication of drugs or alcohol in your life, . . . thankfully that hasn't been part of the mix for you."  RP (May 4, 2021) at 27.

After its colloquy, the court accepted the State's recommendation and granted Mr. Nelson a SSOSA sentence.  The court imposed 60 months of confinement on counts 1 through 4, 87 months on count 5, and ran the sentences concurrently.  As part of the SSOSA, the court suspended the 87-month confinement term and, as a condition of the suspended sentence, ordered Mr. Nelson to serve (1) 10 months of confinement in county jail, (2) 87 months of community supervision, and (3) five years (60 months) of sex offender treatment with Dr. Clark D. Ashworth, PhD.  The court imposed 36 months of community custody should the SSOSA sentence be revoked.  The court included a notation on the plea agreement that the combined term of incarceration and community custody should "not exceed 120 months."  CP at 102.

The court also imposed a series of community custody conditions, including the following, which Mr. Nelson challenges on appeal:

> **4.2(a) Community Custody Conditions**. . . .  The defendant shall comply
>     with the following conditions unless otherwise ordered by the court:
>  . . . .
> (10) pay the supervision fee assessment.
>  . . . .
> (12) . . .  shall not reside within any community protection zone (inside
>     880 feet of the facilities and grounds of a public or private school).
>     RCW 9.94A.030.

No. 39110-8-III
*State v. Nelson*

. . . .

**APPENDIX H**

. . . .

(5)  Pay supervision fees as determined by the Department of Corrections;

. . . .

(12) Do not possess or consume alcohol containers or possess alcohol containers.

(13) Submit to breathalyzer testing or any other testing to ensure no alcohol consumption.

. . . .

(17) Do not enter bars, taverns, lounges, or other establishments where the primary source of income is the sale of alcoholic beverages to include liquor stores.

(18) Do not enter known drug locations as defined by your supervising CCO.[2]

(19) Do not use or possess marijuana or other products containing THC[3] without a valid Washington authorization for use of medical marijuana obtained by a process approved in advance by your CCO and SOTP.[4]

(20) Do not associate with anyone involved in criminal activities as defined by your CCO.

(21) Have no contact with minors unless approved by your supervising CCO and Sex Offender Treatment Provider.

(22) Do not use or possess drug paraphernalia.

(23) Do not use or possess deadly weapons or body armor.

. . . .

(26) Submit to Polygraph testing at the direction of your assigned CCO.

(27) Submit to urinalysis testing or other testing to ensure drug-free status.

. . . .

---

[2] Community custody officer.

[3] Tetrahydrocannabinol.

[4] Sex offender treatment provider.

5

> (30) No internet access without prior approval of your CCO and/or Sex
> Offender Treatment Provider.  This condition is not intended to
> prevent approved use of internet resources for purposes of seeking
> employment.
>  . . . .
> (38) Do not live within 888 [sic] feet of any community protection zone.

CP at 64, 72-74.  Defense counsel did not object to any of the community custody

conditions.

*SSOSA violations*

In November 2021, the Department of Corrections (DOC) filed a notice of

violation, alleging that Mr. Nelson failed to abide by the social media and electronic

device monitoring agreement that was a part of his SSOSA sentence.  During his required

polygraph testing, Mr. Nelson admitted to accessing his mother's laptop computer

approximately five times.  A few days later, Mr. Nelson's CCO alleged a second

violation, that Mr. Nelson used his cell phone to access social media and view

pornography.[5]  One month later, the court held a hearing to address the violations.  Mr.

Nelson stipulated to the two violations, and the court sanctioned him with 30 days of

electronic home monitoring.

---

[5] This violation report is not in the record.

6

On June 2, 2022, the State petitioned to revoke Mr. Nelson's SSOSA sentence for three additional violations that occurred in late May. Mr. Nelson's CCO alleged that Mr. Nelson (1) possessed an Internet capable device without permission (a tablet), (2) accessed social media, and (3) accessed sexually explicit materials intended for sexual gratification. The CCO's report also noted that Mr. Nelson had "concerning" conversations with his biological mother and sister that were of "graphic sexual nature." CP at 142.

Twelve days later, the State supplemented its petition to revoke Mr. Nelson's SSOSA with three more violations. Mr. Nelson's CCO alleged that Mr. Nelson (4) accessed the Internet without prior approval from his CCO and treatment provider, (5) failed to inform his CCO and treatment provider of sexual activities, and (6) failed to include serious relationship partners in his treatment plan. The CCO's report noted that during the week Mr. Nelson had the tablet, he had several inappropriate conversations with females and he may have impregnated a high school student. The CCO also noted that Dr. Ashworth was unaware of Mr. Nelson's sexual activity and that the doctor had concerns over Mr. Nelson's behaviors and dishonesty. The CCO recommended revoking Mr. Nelson's SSOSA if he was found guilty of one or more of the alleged violations.

*Revocation hearing*

The trial court held a revocation hearing on July 12, 2022. At the start of the

hearing, Mr. Nelson stipulated to each of the six violations. The State asked the court to

revoke Mr. Nelson's SSOSA sentence. Defense counsel opposed revocation.

During the hearing the court also heard from Dr. Ashworth, who told the court:

> My major concern with Mr. Nelson is the amount of time we've
> focused on these issues. We've worked on the consequences that are likely.
> We've talked about the consequences he's already experienced. We spent
> significant time looking at the conditions of his [judgment and sentence]
> and community supervision.
> And what I learned recently, and we're talking since he was jailed 41
> days ago, is that there's a lot of things that he just has not talked to me
> about. He has appeared to understand. We've gone through it. I've been
> very concrete with him, which is appropriate for his intellectual deficits,
> and he's not told me about the sexual relationship. He's not told me about
> some of the accessing of pornography or having that laptop computer.
> If he's going to continue in treatment with me at any time we're
> going to have to deal with that, because I can't do it with somebody who's
> not willing to be candid and disclosing.

RP (July 12, 2022) at 83-84. After Dr. Ashworth spoke, the court thanked him and stated,

"I don't think we'd ordinarily have you up in the witness stand talking anyway, so I'm not

going to subject you to cross-examination." RP (July 12, 2022) at 84.

The court concluded the hearing by explaining its decision. It noted that Mr.

Nelson had been given a chance after his first set of violations to correct his behavior, but

8

he had failed to be open and candid with his treatment provider and CCO about his sexual

activity and struggles. The court explained,

> So, what troubles me more than anything else is this lack of candor with your corrections officer and Dr. Ashworth. . . .
>
> You've been into this thing over a year, and Dr. Ashworth is telling me, as politely as he can, that *there's been very little progress* because we keep having to go back over the same thing. And that may be due to what everybody's here is describing as an intellectual deficit or capacity issue, but that to me bodes equally poorly for a future in sex offender treatment. If we spent a year and you're still accessing the Internet and well, you're having [an] Internet capable device when you're not supposed to. You're accessing pornography on the device. You're not talking to either your corrections officer or your therapist about it.
>
> And now a new relationship that you're not talking about—I'm not going to go to the point of is that person underage or overage—but having that type [of] relationship and not being candid with the people trying to help you, to me, puts us over the line. . . . The last thing I ever want to do as a judge [is] have a presumption [of] sending people to prison if there's a way that I believe they can be helped in the community, I don't see that that's capable anymore.
>
> So, while I have great regrets about this and great concerns about this, I think that I started by saying I try to be consistent with this. And if I have a person who's gone through one process and maybe they come back and it's just one or two little things, okay, we can deal with it. But this isn't. This goes right to the heart of a sex offender treatment program, that you can't be candid with the people trying to help you and haven't learned to be candid in the year you've been in the program.
>
> So, I don't believe that you can be treated in the community any longer without being a threat to the community. . . .
>
> And in order to be consistent, in order to be fair, frankly, to all those people who have violations, given the breadth of these violations, the number of the violations over the period of time, *the lack of progress, really, that the lack of any hope for continuing progress*, I feel compelled to

9

revoke the special sex offender sentencing alternatives. That means that I'll reimpose the original sentence. . . .

RP (July 12, 2022) at 87-90 (emphasis added).

Following the hearing, the court entered its written order revoking Mr. Nelson's SSOSA sentence. The court found that Mr. Nelson willfully violated the conditions of his SSOSA sentence based on the "6 violations outlined in the filed notice of violations that [Mr. Nelson] stipulated to." CP at 86.

Mr. Nelson timely appeals.

## ANALYSIS

A.    DUE PROCESS—ADEQUATE NOTICE

Mr. Nelson, emphasizing the italicized remarks from the sentencing judge, contends the court violated his due process right to adequate notice because he was not notified that his SSOSA sentence would be revoked based on his failure to make satisfactory progress in treatment. We disagree.

A SSOSA sentence may be revoked at any time if there is sufficient proof to reasonably satisfy the court that the offender has violated a condition of the suspended sentence or failed to make satisfactory progress in treatment. *State v. McCormick*, 166 Wn.2d 689, 705, 213 P.3d 32 (2009); RCW 9.94A.670(11). We review a trial court's decision to revoke a SSOSA sentence for an abuse of discretion. *State v. Ramirez*,

10

140 Wn. App. 278, 290, 165 P.3d 61 (2007). "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *McCormick*, 166 Wn.2d at 706 (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

An offender facing revocation of a SSOSA sentence has only minimal due process rights akin to one facing revocation of probation or parole. *State v. Dahl*, 139 Wn.2d 678, 683, 990 P.2d 396 (1999). The *Dahl* court observed the United States Supreme Court's holding that minimal due process requires

> (a) written notice of the claimed violations; (b) disclosure to the parolee of the evidence against him; (c) the opportunity to be heard; (d) the right to confront and cross-examine witnesses (unless there is good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a statement by the court as to the evidence relied upon and the reasons for the revocation.

*Id*. (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). These requirements exist to ensure that the finding of a violation of a term of a suspended sentence will be based on verified facts. *Id*. "For purposes of minimal due process, proper notice must set forth all alleged parole violations so that a defendant has the opportunity to marshal the facts in his defense." *Id.* at 684.

Mr. Nelson argues he did not have adequate notice that the lower court would revoke his SSOSA, in part, based on a failure to make progress in treatment. The State

11

responds that the court based its revocation on the six violations alleged in writing by Mr. Nelson's CCO and stipulated to by Mr. Nelson. The State emphasizes the court's written order revoking Mr. Nelson's SSOSA, which provides that the basis for its decision was the "6 violations outlined in the filed notice of violations that [Mr. Nelson] stipulated to." CP at 86. We agree with the State.

Washington is a written order state. *State v. Dailey*, 93 Wn.2d 454, 458-59, 610 P.2d 357 (1980). "[A] trial court's oral statements are 'no more than a verbal expression of [its] informal opinion at that time . . . necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned.'" *Id*. at 458 (some alterations in original) (quoting *Ferree v. Doric Co*., 62 Wn.2d 561, 567, 383 P.2d 900 (1963)). A trial court's oral decision has no binding or final effect unless it is formally incorporated into findings of fact, conclusions of law, and judgment. *Id*. at 458-59 (citing *Ferree*, 62 Wn.2d at 567).

The court's written order makes clear that it revoked Mr. Nelson's SSOSA based on the six violations he stipulated to and had notice of, not Mr. Nelson's failure to make satisfactory progress in treatment. The court orally specified some of the violations: "you're still accessing the Internet," "you're having [an] Internet capable device when you're not supposed to," "[y]ou're accessing pornography on the device," "[a]nd now a

12

new relationship that you're not talking about." RP (July 12, 2022) at 88. The court's

statements about a lack of progress in treatment were mere observations based on the

violations before it. We conclude that the sentencing court did not deny Mr. Nelson his

due process right to adequate notice of the basis for the SSOSA revocation.

> B.     SENTENCE EXCEEDS STATUTORY MAXIMUM

Mr. Nelson contends that his combined term of confinement and community

custody exceeds the statutory maximum. The State concedes. We accept the State's

concession and remand for the sentencing court to correct the error.

Second degree child molestation is a class B felony, punishable by a maximum of

10 years of confinement (120 months). RCW 9A.44.086(2); RCW 9A.20.021(1)(b).

A sentencing court is generally required to impose three years of community custody

when a person is convicted of a sex offense. *See* RCW 9.94A.701(1)(a). If an offender's

standard range term of confinement combined with the term of community custody

exceeds the statutory maximum for the crime, the sentencing court is required to

reduce the term of community custody to be within the statutory maximum. Former

RCW 9.94A.701(9) (2010); *see also State v. Boyd*, 174 Wn.2d 470, 472-73, 275 P.3d 321

(2012) (noting that a "*Brooks*[6] notation"—when a sentencing court notes that the total

---

[6] *In re Pers. Restraint of Brooks*, 166 Wn.2d 664, 211 P.3d 1023 (2009).

term must not exceed the statutory maximum—does not comply with the statutory

procedure for correcting an erroneous judgment and sentence).

Here, because the court revoked Mr. Nelson's SSOSA sentence, his original

sentence was reinstated. The court's original sentence imposed 87 months of

confinement for count 5, second degree child molestation, and ran the other lesser

sentences concurrent. The original sentence also imposed 36 months of community

custody. The combined sentence totals 123 months, which is 3 months too long. The

court included a "*Brooks* notation" on the plea agreement and noted that the total

combined term must not exceed 120 months. Per *Boyd*, the *Brooks* notation was

insufficient to comply with former RCW 9.94A.701(9). We remand for the sentencing

court to reduce the community custody term by 3 months.

C.     COMMUNITY CUSTODY CONDITIONS

Mr. Nelson challenges 14 community custody conditions as being not crime

related, unconstitutional, or not authorized by statute. He also contends that the DOC

supervision fee and the supervision fee assessment must be struck from his judgment and

sentence due to recent legislation.

As a threshold issue, the State argues we should not review many of Mr. Nelson's

challenges because he raises them for the first time on appeal and because they are not

ripe. The State's arguments require us to consider the policy reasons these procedural hurdles seek to balance.

Appellate review normally does not extend to arguments not raised in the trial court. *See* RAP 2.5. Courts, however, have discretionary authority to consider issues of manifest constitutional error that were not raised in the trial court, provided that an adequate record exists to consider the claim. RAP 2.5(a)(3); *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

With regard to ripeness, our Supreme Court recently reaffirmed that community custody conditions may be challenged for the first time on appeal where the challenge involves a legal question that can be resolved on the existing record, preenforcement. *State v. Wallmuller*, 194 Wn.2d 234, 238, 449 P.3d 619 (2019) (citing *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018); *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008)). Such a claim is ripe for review on direct appeal if the issues raised are primarily legal, do not require further factual development, and the challenged action is final. *State v. Sanchez Valencia*, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010). Before refusing to review a preenforcement challenge on direct appeal, a reviewing court must also consider the hardship to the offender. *Id.*

15

Mr. Nelson contends that some of his challenges are constitutional in nature and should be reviewed under RAP 2.5(a)(3), and that an adequate record exists for use to consider both his constitutional and preenforcement challenges. He also argues that we should consider the hardship he would suffer should we not exercise review. A review of Mr. Nelson's challenges and the existing record persuades us that we should exercise our discretion in favor of reviewing his many challenges.

*Standards of review for community custody conditions*

We review community custody conditions for an abuse of discretion. *Padilla*, 190 Wn.2d at 677. A trial court necessarily abuses its discretion when it imposes an unconstitutional condition. *Id.* We review whether a sentencing court had statutory authority to impose a sentencing condition de novo. *State v. Johnson*, 180 Wn. App. 318, 325, 327 P.3d 704 (2014).

1. *Statutory standards*

When a trial court sentences a person to community custody, it is required to impose certain enumerated conditions of community custody and has discretion to impose other conditions. RCW 9.94A.703(1)-(4). In addition to enumerated conditions, the court may craft crime-related prohibitions, which are "order[s] of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has

been convicted." RCW 9.94A.030(10); *see* RCW 9.94A.703(3)(f). Such conditions are usually upheld if reasonably crime related. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). A court does not abuse its discretion if a reasonable relationship between the crime of conviction and the community custody condition exists. *See State v. Irwin*, 191 Wn. App. 644, 658-59, 364 P.3d 830 (2015). The prohibited conduct need not be identical to the crime of conviction, but there must be "some basis for the connection." *Id.* at 657. We will strike a crime-related condition if there is no evidence in the record linking the circumstance of the crime to the condition. *Id*. at 656.

A sentencing court is also permitted to require that an offender perform "affirmative acts necessary to monitor compliance" with court-ordered community custody conditions. RCW 9.94A.030(10).

### 2. *Constitutional standards*

In addition to meeting statutory requirements under RCW 9.94A.703, community custody conditions must also pass constitutional muster. We do not presume that community custody conditions are constitutional. *Sanchez Valencia*, 169 Wn.2d at 793.

"Limitations upon fundamental rights are permissible, provided they are imposed sensitively." *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). Conditions that interfere with the First Amendment to the United States Constitution rights of speech and

association, "must be reasonably necessary to accomplish the essential needs of the state and public order." *Padilla*, 190 Wn.2d at 684.

A condition is unconstitutionally vague if "(1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *Id.* at 677. If a person of ordinary intelligence can understand what the law proscribes, it is not vague even if there are possible areas of disagreement. *Bahl*, 164 Wn.2d at 754. However, a statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct. *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988).

A condition is unconstitutionally overbroad if it is couched in terms so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well. *In re Pers. Restraint of Sickels*, 14 Wn. App. 2d 51, 67, 469 P.3d 322 (2020) (citing *Blondheim v. State*, 84 Wn.2d 874, 878, 529 P.2d 1096 (1975)).

With these standards in mind, we review the challenged conditions in turn.

CONDITION 12: DO NOT POSSESS ALCOHOL CONTAINERS

Mr. Nelson contends the portion of condition 12 that prohibits him from possessing alcohol containers is not crime related. We agree.

18

The sentencing court has discretion to order an offender to refrain from possessing or consuming alcohol. RCW 9.94A.703(3)(e). This condition may be imposed even if alcohol played no role in the underlying offense. *State v. Jones*, 118 Wn. App. 199, 206-07, 76 P.3d 258 (2003). However, other alcohol-related conditions must be crime related. *See* RCW 9.94A.703(3)(f).

Mr. Nelson asserts that possession of an alcohol container does not necessarily mean the individual consumed the alcohol inside. He argues a person sometimes collects beer cans in exchange for cash. He points to *State v. Sorrell*, 2 Wn. App. 2d 156, 171, 408 P.3d 1100 (2018), as an example of such a circumstance, where the defendant collected cans for gas money to attend court hearings. He makes a valid point.

Here, there is no evidence that Mr. Nelson's offenses involved alcohol. His presentence investigation report notes that he reported having never tried alcohol. The sentencing court itself noted that alcohol was not a part of Mr. Nelson's life. Therefore, the portion of condition 12 that prohibits Mr. Nelson from possessing alcohol containers is not crime related and must be struck on remand. However, the unchallenged portion of the condition, that prohibits Mr. Nelson from possessing or consuming alcohol, is valid. *See Jones*, 118 Wn. App. at 206-07.

CONDITION 17: DO NOT ENTER BARS, TAVERNS, OR LOUNGES

Mr. Nelson contends condition 17 is not crime related. We agree.

In support of his argument, Mr. Nelson draws our attention to two unpublished cases: *State v. Martin*, No. 34037-6-III (Wash. Ct. App. May 4, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/340376_unp.pdf, and *State v. State v. Morgan*, No. 51558-0-II (Wash. Ct. App. Oct. 1, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2051558-0-II%20Unpublished%20Opinion.pdf. In both cases, this court held that a defendant may not be prohibited from entering establishments where alcohol is served if there is no evidence alcohol contributed to the defendant's offense. *Martin*, No. 37037-6-III, slip op. at 7; *Morgan*, No. 51558-0-II, slip op. at 6. In both cases, this court concluded that the condition was not crime related. *Martin*, No. 34037-6-II, slip op. at 7; *Morgan*, No. 51558-0-II, slip op. at 6. We are persuaded that this holding from *Martin* and *Morgan* is correct.

As discussed above, nothing in the record indicates that alcohol contributed to Mr. Nelson's offenses. Therefore, the condition is not crime related and it must be struck.

CONDITION 18:  DO NOT ENTER KNOWN DRUG LOCATIONS

Mr. Nelson contends condition 18 is not crime related and is unconstitutionally vague.  We decline to address the constitutional challenge because the condition must be struck on nonconstitutional grounds.

*Crime relatedness*

Mr. Nelson contends condition 18 is not crime related because there is no evidence he used drugs or that drugs contributed to his offenses.  We agree.

Mr. Nelson cites *State v. Munoz-Rivera*, 190 Wn. App. 870, 892-94, 361 P.3d 182 (2015), to support his argument.  There, we directed the sentencing court to strike a similar condition that prohibited the defendant from frequenting any places where drugs are commonly known to be used, possessed, or delivered.  *Id*. at 892-93.  We reasoned, in part, that because there was no evidence of drug use in the case the condition was not crime related.  *Id*. at 893.

Likewise, here, there is no evidence that drugs played a role in Mr. Nelson's crimes.  The presentence investigation report noted Mr. Nelson reported having never tried nonprescribed drugs.  He also denied consuming or possessing illicit drugs or controlled substances during his polygraph.  The sentencing court also explicitly noted

21

that drugs were not a part of Mr. Nelson's life.  Thus, condition 18 is not crime related

and must be struck.

CONDITION 19: DO NOT USE OR POSSESS THC PRODUCTS

Condition 19 orders: "Do not use or possess marijuana or other products

containing THC without a valid Washington authorization for use of medical marijuana

*obtained through a process approved in advance by your CCO or SOTP*."  CP at 73

(emphasis added).  Mr. Nelson argues that the sentencing court exceeded its statutory

authority when it imposed the emphasized portion of this condition.  We agree.

Unless waived, the sentencing court is required to impose a condition requiring

that the defendant "[r]efrain from possessing or consuming controlled substances except

pursuant to lawfully issued prescriptions."[7]  RCW 9.94A.703(2)(c).  The unchallenged

portion of condition 19 contains language similar to RCW 9.94A.703(2)(c) and appears to

be aimed at accomplishing the statutory purpose.

Mr. Nelson argues the sentencing court is not authorized to place additional

restrictions on lawfully obtained controlled substances.  He contends the condition is

unclear as to what "process" is contemplated because, under the condition as written, his

---

[7] The sentencing court imposed this condition on Mr. Nelson.

CCO could reject his use of medical cannabis obtained with a lawfully issued authorization if his CCO disapproved of the process. We agree.

We conclude that the court exceeded its statutory authority when it added the challenged language to condition 19. The unchallenged portion of the condition is sufficient to restrict Mr. Nelson from using medical cannabis, which contains a controlled substance, except pursuant to a lawfully issued authorization. The challenged language is not authorized under RCW 9.94A.703 and therefore must be struck.

CONDITION 20: ASSOCIATION WITH ANYONE INVOLVED IN CRIMINAL ACTIVITIES

Mr. Nelson contends condition 20 is (1) not crime related, (2) infringes on his freedom of association, and (3) is unconstitutionally vague. Again, because we resolve this issue in Mr. Nelson's favor on nonconstitutional grounds, we do not address his constitutional challenges.

There is no evidence that Mr. Nelson's association with people involved in criminal activities contributed to his convictions. Thus, condition 20 is not crime related and must be struck.

CONDITION 21: NO CONTACT WITH MINORS

Condition 21 prohibits Mr. Nelson from having "contact with minors unless approved by [his] supervising CCO and Sex Offender Treatment Provider." CP at 73.

23

In its current form, the prohibition would permit either his CCO or treatment provider to deny him any contact with his own biological children. Mr. Nelson contends this condition interferes with his fundamental right to parent and should be modified to permit contact with his own biological children. We provide Mr. Nelson only limited relief with respect to this challenge.

Natural parents have a fundamental right in the "care, custody, and management" of their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Conditions that interfere with fundamental rights must be "sensitively imposed" so that they are "reasonably necessary to accomplish the essential needs of the State and public order." *Warren*, 165 Wn.2d at 32.

Mr. Nelson cites *Sickels* and argues, there, we accepted the State's concession that the petitioner should be permitted contact with his biological children. This argument is insufficient. In accepting the concession in *Sickels*, we did not rule on the merits of the argument. *See* 14 Wn. App. 2d at 58-59.

Mr. Nelson fails to cite authority for the proposition that a defendant convicted of sexual offenses against a minor is entitled to have contact with his own biological children. We discern that such a rule must be applied on a case-by-case basis, after considering what risk the actual defendant poses to their biological children. Here,

24

although Mr. Nelson did not engage in any sexual offenses against his sister or his sister's four-year-old child, there is evidence he viewed one or both as potential objects of his desire. *See* CP at 142.

Nevertheless, because constitutional issues are implicated, we deem it appropriate to require the trial court to be the ultimate arbiter of whether Mr. Nelson may have contact with his biological children. We direct the trial court to revise condition 21 to prohibit Mr. Nelson from having "contact with minors unless (1) approved by his supervising CCO and Sex Offender Treatment Provider or (2) by court order." In this manner, the trial court, not some other person, will be charged with balancing Mr. Nelson's constitutional rights.[8]

CONDITION 22: DO NOT USE OR POSSESS DRUG PARAPHERNALIA

Mr. Nelson contends condition 22 is not crime related. We agree.

There is no evidence drugs or drug paraphernalia contributed to Mr. Nelson's offenses. Additionally, "'mere possession of drug paraphernalia is not a crime.'" *Munoz-Rivera*, 190 Wn. App. at 892 (quoting *State v. Land*, 172 Wn. App. 593, 605, 295

---

[8] In *State v. Hubbard*, 1 Wn.3d 439, 452, 527 P.3d 1152 (2023), the court recognized that factual circumstances might change after a person is sentenced, and that such changes might merit modifying one or more community custody conditions. The court noted, absent a carefully written condition or grant of express authority by the legislature, there is no avenue for relief once a sentence becomes final. *Id.*

P.3d 782 (2013)).  In both *Munoz-Rivera* and *Land*, we ordered the sentencing court to strike a similar condition where there was no evidence that drug paraphernalia was related to the crimes of conviction.  So too here.  We direct the sentencing court to strike condition 22.

CONDITION 23:  DEADLY WEAPONS/BODY ARMOR PROHIBITION

Mr. Nelson contends condition 23 is not statutorily authorized.  We agree.

Under RCW 9.94A.706(1), "[n]o offender sentenced to a term of community custody under the supervision of the department may own, use, or possess firearms, ammunition, or explosives."  However, as we pointed out in *State v. Acevedo*, 159 Wn. App. 221, 233, 248 P.3d 526 (2010), "no similar statute prohibits an offender from possessing all deadly weapons."  Thus, we held that the trial court "exceeded its authority by imposing the deadly weapons condition."  *Id.*; *see also State v. Combs*, 102 Wn. App. 949, 954, 10 P.3d 1101 (2000) (holding that the trial court's imposition of a condition prohibiting a defendant from owning "weapons" exceeded its statutory authority).

Here, condition 23 prohibits Mr. Nelson from owning or possessing deadly weapons or body armor.  There is no statute that prohibits an individual on community custody from owning or possessing deadly weapons or body armor.  Nor is there any evidence that Mr. Nelson's crimes involved deadly weapons or body armor.  Thus, the

sentencing court exceeded its authority when it imposed this condition, and the condition must be struck.

CONDITION 26:  RANDOM POLYGRAPH TESTING

Mr. Nelson contends condition 26 should be modified on remand to clarify that polygraph testing can only be used to monitor compliance with the requirement of making reasonable progress in treatment or with other conditions.  We agree.

Mr. Nelson cites *Combs* to support his argument.  In *Combs*, we upheld a condition that required a defendant convicted of child molestation to submit to unlimited polygraph testing.  *Id*. at 952.  The defendant argued that the condition should have stated the scope of the polygraph examinations and that the purpose was to monitor his compliance with the court's order.  *Id*.  We concluded that the language of the defendant's judgment and sentence, taken as a whole, impliedly limited the scope of the polygraph testing to monitor only his compliance with the community placement order. *Id*. at 953.  However, we explained that the defendant's judgment and sentence "should have explicitly contained the 'monitoring compliance' language." *Id*.  We also noted, "[a]s a policy matter, cautious attention to detail in the sentencing forms will serve to better inform offenders of their rights, ensure protection of those rights, and prevent

27

confusion among judges, defendants and community corrections officers regarding the applicable legal standard." *Id*.

Given *Combs*, we can readily conclude that Mr. Nelson's judgment and sentence, taken as a whole, impliedly limits the scope of condition 26 to monitoring compliance with the court-ordered conditions. However, because we are ordering remand for other reasons, we deem it appropriate to direct the trial court to revise condition 26 to expressly limit the polygraph's use for monitoring compliance with Mr. Nelson's community custody conditions.

CONDITIONS 13 AND 27: BREATH ANALYSIS/URINALYSIS

Mr. Nelson contends that condition 13, which requires him to submit to breathalyzer testing to ensure no alcohol consumption, and condition 27, which requires him to submit to urinalysis to ensure drug free status, are not crime related and violate his right to privacy under article I, section 7 of the Washington Constitution. We disagree and conclude both conditions are valid.

Mr. Nelson relies on *State v. Olsen*, 189 Wn.2d 118, 399 P.3d 1141 (2017), to support his argument that the condition violates his right to privacy under the Washington Constitution. In *Olsen*, our Supreme Court considered whether a requirement that driving under the influence probationers submit to random urinalysis testing violated their privacy

28

interests under article I, section 7 of the Washington Constitution. *Id.* at 120. The trial

court imposed the random testing condition along with conditions prohibiting the

probationers from consuming drugs and alcohol. *Id.* at 121. The court explained that,

while random urinalysis testing of the probationers did implicate privacy interests, the

testing conditions may be imposed if they are narrowly tailored to achieve a compelling

State interest. *See id.* at 128. The court ultimately upheld the urinalysis testing condition

because it was narrowly tailored and "imposed only to assess compliance with a valid

prohibition on drugs and alcohol use." *Id.* at 130.

Contrary to Mr. Nelson's argument, *Olsen* provides support for the sentencing

court's imposition of the breath analysis and urinalysis testing conditions. Under *Olsen*,

the conditions are valid because they are imposed to monitor compliance with valid

probation conditions. The sentencing court ordered Mr. Nelson to not possess or

consume alcohol, which it was permitted to do even though alcohol played no role in his

offenses. RCW 9.94A.703(3)(e); *Jones*, 118 Wn. App. at 206-07. The trial court also

ordered Mr. Nelson to not possess or consume controlled substances except pursuant to

lawfully issued prescriptions, which it was permitted to do even though controlled

substances played no role in his offenses. RCW 9.94A.703(2)(c); *In re Pers. Restraint of

Brettell*, 6 Wn. App. 2d 161, 173, 430 P.3d 677 (2018). Mr. Nelson acknowledges the

court had authority to impose these conditions and does not challenge them on appeal.

Because the court had authority to impose those prohibitions, it was also permitted to

impose conditions to monitor compliance with the prohibitions. *See Olsen*, 189 Wn.2d at

135; *see also State v. Vant*, 145 Wn. App. 592, 603-04, 186 P.3d 1149 (2008) (holding

that the sentencing court has authority to impose random urinalysis and breath analysis to

monitor compliance with valid conditions). We affirm conditions 13 and 27.

CONDITION 30: NO INTERNET ACCESS WITHOUT CCO APPROVAL

Mr. Nelson contends condition 30 is unconstitutionally overbroad and vague. He

requests we remand for the condition to be modified. We agree and grant his request.

Restrictions on Internet access implicate the First Amendment to the United States

Constitution. *Packingham v. North Carolina*, 582 U.S. 98, 104, 137 S. Ct. 1730, 198 L.

Ed. 2d 273 (2017). But "the First Amendment permits a State to enact specific, narrowly

tailored laws that prohibit a sex offender from engaging in conduct that often presages a

sexual crime, like contacting a minor or using a website to gather information about a

minor." *Id*. at 107. A court may restrict a defendant's access to the Internet if those

restrictions are "narrowly tailored to the dangers posed by the specific defendant." *State

v. Johnson*, 197 Wn.2d 740, 745, 487 P.3d 893 (2021). We have held that a blanket

prohibition on using the Internet is impermissibly broad, even where, as here, the defendant used the Internet to commit a sex offense. *Sickels*, 14 Wn. App. 2d at 73.

Mr. Nelson points to *Sickles* to support his argument. In *Sickels*, we interpreted two conditions similar to condition 30 challenged here. *Id.* at 71-75. There, Mr. Sickles pleaded guilty to attempted second degree rape of a child after responding to a Craigslist advertisement sting operation. *Id.* at 56-57. Two of his community custody conditions restricted him from any Internet access or use "'without the prior approval of the supervising CCO'" and prohibited his use of Internet capable devices "'except as necessary for employment purposes (including job searches).'" *See id.* at 71. We held the "limitation of Internet use to employment purposes is overly broad" and the provision for '[n]o Internet access or use' . . . is even more objectionable." *Id.* at 73. We also held the provision delegating authority to Mr. Sickles' supervising CCO to approve Internet access was overbroad. *Id.*

For these same reasons, we conclude condition 30 here is overbroad. Like the conditions in *Sickles*, condition 30's limitation on Mr. Nelson's use of the Internet "for the purposes of seeking employment" and its delegation of authority to the CCO to allow Internet access renders the condition overbroad. CP at 74.

31

Condition 30's prohibition of Internet access without CCO approval is also vague because it "does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *Padilla*, 190 Wn.2d at 677. The CCO's discretion to determine the extent of the condition "only makes the vagueness problem more apparent, since it virtually acknowledges that on its face it does not provide ascertainable standards for enforcement." *Bahl*, 164 Wn.2d at 758.

*Johnson* provides guidance on how a trial court may limit an offender's Internet access without violating their constitutional rights. There, our Supreme Court upheld a restriction that authorized the offender to access the Internet through filters approved by his CCO. The court held that the condition was not overbroad, noting that the offender was not prohibited from accessing any particular social media site. 197 Wn.2d at 746. The court further held that the condition was not unconstitutionally vague because the CCO would have the judgment and sentence and related documents to provide sufficient benchmarks to protect from arbitrary enforcement. *Id.* at 748. We direct the trial court to modify condition 30 by adopting language similar to that approved by the *Johnson* court.

CONDITIONS 4.2(a)(12) AND 38: COMMUNITY PROTECTION ZONE EXCLUSION

Mr. Nelson contends these conditions are not statutorily authorized. We agree.

Both conditions seem to derive from RCW 9.94A.703(1)(c), under which the sentencing court is required to impose a condition to "prohibit the offender from residing in a community protection zone,"[9] "[i]f the offender was sentenced under RCW 9.94A.507 for an offense listed in RCW 9.94A.507(1)(a)."

RCW 9.94A.507 provides:

> (1) An offender who is not a persistent offender shall be sentenced under this section if the offender:
> (a) Is convicted of:
> (i) Rape in the first degree, rape in the second degree, rape of a child in the first degree, child molestation in the first degree, rape of a child in the second degree, or indecent liberties by forcible compulsion;
> (ii) Any of the following offenses with a finding of sexual motivation: Murder in the first degree, murder in the second degree, homicide by abuse, kidnapping in the first degree, kidnapping in the second degree, assault in the first degree, assault in the second degree, assault of a child in the first degree, assault of a child in the second degree, or burglary in the first degree; or
> (iii) An attempt to commit any crime listed in this subsection (1)(a).

Mr. Nelson was convicted of three counts of third degree child rape, one count of communication with a minor for immoral purposes, and one count of second degree child molestation. None of those offenses are listed in RCW 9.94A.507(1)(a). Thus, the trial

---

[9] "'Community protection zone' means the area within 880 feet of the facilities and grounds of a public or private school." RCW 9.94A.030(6).

court was not statutorily authorized to order these conditions and they must be struck on

remand.

LFOs

Mr. Nelson contends the DOC supervision fees condition (Schedule H, condition

5) and the supervision fee assessment condition (Judgment and Sentence, condition

4.2(a)(10)) must be struck from his judgment and sentence due to recent legislation.  The

State concedes only that DOC supervision fees must be struck.  We discuss each

condition separately.

*DOC supervision fees*

We accept the State's concession that the DOC supervision fees condition

(Schedule H, condition 5) must be struck on remand.  Statutory amendments related to

LFOs imposed upon conviction generally apply to all cases pending on direct appeal that

are not yet final.  *See*, *e.g.*, *State v. Wemhoff*, 24 Wn. App. 2d 198, 201-02, 519 P.3d 297

(2022); *State v. Ramirez*, 191 Wn.2d 732, 749, 426 P.3d 714 (2018).

Under former RCW 9.94A.703(2)(d) (2018), the sentencing court was permitted to

impose a community custody condition requiring the defendant to pay supervision fees as

determined by DOC.   Effective July 1, 2022, the legislature removed the subsection of

the statute that allowed a trial court to impose the DOC supervision fees. *See* LAWS OF 2022, ch. 29, §§ 7, 8.

Mr. Nelson's case is pending on direct appeal and is not yet final. Therefore, the amended statute applies, and we direct the sentencing court to strike the DOC supervision fees condition.

*Supervision fee assessment*

Mr. Nelson argues the supervision fee assessment must also be struck due to recent legislation. The State argues that the legislative changes to former RCW 9.94A.703(2)(d) (removing the DOC supervision fees condition) do not apply to the supervision fee assessment condition. We agree, but the State is looking at the wrong statute.

Under former RCW 9.94A.780(1) (2011), whenever the sentencing court imposed a punishment that required supervision services to be provided to an offender, the court was required to order the offender to pay the DOC a supervision intake fee. Effective June 9, 2022, the legislature repealed the supervision intake fee statute. *See* LAWS OF 2022, ch. 29, § 13; *see also* LAWS OF 2022, ch. 29, § 9 (deleting the "supervision fee assessment" payment requirement from former RCW 9.94A.704(3)(d) (2019)). Because Mr. Nelson's case is pending on appeal and not yet final, the amended statutes apply. We direct the sentencing court to strike the supervision fee assessment.

In conclusion, we affirm in part, reverse in part, and remand for the trial court to correct Mr. Nelson's sentence by reducing the community custody term by three months, and to strike or modify the following community custody conditions:

- Judgment and Sentence:

    o   Strike condition 4.2(a)(10)(supervision fee assessment);

    o   Strike condition 4.2(a)(12) (community protection zone);

- Schedule H:

    o   Strike condition 5 (DOC supervision fees)

    o   Modify condition 12 by striking the portion of the condition that prohibits possession of "alcohol containers;"

    o   Strike condition 17 (bars, taverns, lounges);

    o   Strike condition 18; (entry to known drug locations)

    o   Modify condition 19 by striking the portion of the condition that provides: "obtained through a process approved in advance by your CCO or SOTP;"

    o   Strike condition 20 (association with persons involved in criminal activities);

- ○ Modify condition 21 (no contact with minors) to allow the condition to be later modified by court order;

- ○ Strike condition 22 (use or possess drug paraphernalia);

- ○ Strike condition 23 (use or possess deadly weapons or body armor);

- ○ Modify condition 26 to clarify that polygraph testing can only be used to monitor compliance with court-ordered conditions;

- ○ Modify condition 30 to allow Mr. Nelson to access the Internet only through filters approved by his CCO; and

- ○ Strike condition 38 (community protection zone).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Pennell, J.                    Cooney, J.